IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


LEO J. SCHWARTZ, III,

        Plaintiff,

v.                                         CIV 07-1106 RB/GBW

SOCORRO COUNTY DETENTION CENTER,
JATEJKKA RAY OLGUIN, MARGARET
ROMERO, STEVEN FARMER, BERNICE
VALLEJOS, NAGO LUCERO, EVANGEL
MALDONADO, AND JOE CARRILLO,

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss on the

Basis of Qualified Immunity and on Other Grounds *(Doc. 61)*.[1]  Plaintiff Schwartz filed a

response titled Memorandum in Opposition to Defendants' Motion to Dismiss on the

Basis of Qualified Immunity and on Other Grounds (*Doc. 68*), and Defendants filed a

reply titled Defendants' Reply to Motion to Dismiss on the Basis of Qualified Immunity

---

[1] Defendants classify this motion as a "Motion to Dismiss on the Basis of Qualified Immunity and on Other Grounds", however the qualified immunity legal analysis in their brief is limited, and the Court does not believe the record is adequately developed to recommend ruling on this issue at this time.  Accordingly, the Court only addresses dismissal under a 12(b)(6) standard.

and on Other Grounds (*Doc. 69*).

This is a prisoner civil rights action under 42 U.S.C. § 1983.  Plaintiff Schwartz is

proceeding *pro se* and *in forma pauperis* and brings eleven titled claims arising out of one

pretrial detainment and three periods of incarcerated confinement at Socorro County

Detention Center (hereinafter "SCDC").  Schwartz asserts that his First, Fifth, Sixth,

Eighth, and Fourteenth Amendment Constitutional Rights were violated.  *Doc. 36* at 2.

Schwartz' claims allege the following violations:  (1) false imprisonment, wrongful

death of his wife, and loss of his business ("Claim One");  (2) denial of a personal

hygiene kit and razor which could have caused him to contract Hepatitis C ("Claim

Two"); (3) violation of his rights by only being issued one jumpsuit, a towel, a blanket, a

mattress, and shower sandals during his stay at SCDC ("Claim Three"); (4) the food

service conditions at SCDC amounted to cruel and unusual punishment ("Claim Four");

(5) the water, lighting, and ventilation at SCDC presented an environmental hazard

("Claim Five");  (6) Schwartz was not allowed any recreation at SCDC and its "day

room" was inadequate ("Claim Six"); (7) Schwartz received inadequate medical care at

SCDC ("Claim Seven"); (8) Schwartz did not receive his mail on several occasions

("Claim Eight"); (9) Schwartz never received three phones calls during his booking at

SCDC and the price to make phone calls was excessive ("Claim Nine"); (10) Schwartz

was not allowed to make paper copies at SCDC, the law library at SCDC was

inadequate, and SCDC personnel retaliated against him by not transferring him to another facility  ("Claim Ten"); and (11) inmates were confined to their cells in lock-down for other inmates misbehavior in violation of their due process rights ("Claim Eleven").  *See Doc. 36.*

For these alleged offenses, Schwartz is seeking a total of $2,275,000.00 in punitive damages, $2,020,00.00 in compensatory damages, and $5000.00 in nominal damages,[2] as well as injunctive relief for various problems at SCDC.  *Id.*

Having considered the arguments, pleadings and relevant law, the Court recommends Defendants motion to dismiss should be granted in part and denied in part for the reasons described herein.

## **Procedural Background**

Schwartz filed his first Complaint of November 1, 2007 (*Doc. 1*), and on March 12, 2008, Schwartz filed a Motion to Amend/Correct his Complaint (*Doc. 14*).  On March 17, 2008, Judge Martinez, the Magistrate Judge previously assigned to this case, granted Defendant's motion noting that Defendants had not yet been served with process and she gave Schwartz the following instruction: "**[a]ny amended complaint filed by**

---

[2] "Nominal" damages are a token amount of damages, typically in the amount of $1, that are awarded when there is a constitutional deprivation but Plaintiff has not suffered any actual damages.  *See, e.g., Robbins v. Chronister,* 435 F.3d 1238 (10th Cir. 2006) (court award of $1 for excessive force claim where no actual damages proven). Thus Schwartz' demand for $5000.00 in "nominal damages" is inherently contradictory.

**Plaintiff should be a single, consolidated amended complaint which includes all of the claims, that he wishes to bring against other parties as defendants in this case**." *Doc. 17* (emphasis in original). Schwartz then filed his first amended complaint on March 31, 2008. *Doc. 18.* On April 17, 2008, Defendants filed a Motion for a More Definite Statement asserting that Schwarz's Amended Complaint did not properly consolidate all his claims. *Doc. 20.* In Judge Martinez's Order granting Defendants Motion for a More Definite Statement, the Court noted that Schwartz failed to comply with the previous Order instructing him to file a single consolidated complaint, and further instructed: "**Plaintiff will be allowed another opportunity to submit a single, complete, consolidated complaint expressly identifying therein all Defendants, presenting all factual allegations, and asserting all claim that he intends to bring in this action** . . ." *Doc. 32* (emphasis in original). On November 22, 2008, Schwartz filed his third amended complaint (*Doc. 36*), which is the complaint Defendants have moved to Dismiss (*Doc. 61*).

Schwartz' claims stem from his incarceration period at SCDC, however at the time he filed his Complaint he was incarcerated at Central New Mexico Correctional Facility, and on December 13, 2007 he was transferred to Torrance County Detention Facility. *Doc. 8.* On June 2, 2008 Schwartz filed a notice of change of address with the Court, naming Western New Mexico Correctional Facility as his current address. *Doc.*

*24.* Then on September 11, 2008, Schwartz filed another notice of change of address

naming Central New Mexico Correction Facility as his current address. *Doc. 35.*

Finally on November 5, 2008, Schwartz filed his last notice of change of address to date,

which names his home address as his current mailing address. *Doc. 42*; *see Doc. 5.*

(Schwartz informing Court that address in *Doc. 42* is his home address).

### Factual Background[3]

On March 31, 2005, Schwartz was arrested for alleged battery on a household

member, pursuant to N.M. Stat. Ann. § 30-3-15. *Doc. 36* at 2. During the arrest, a police

officer on the scene asked Schwartz if he had been drinking. *Id*. Schwartz responded

that he had consumed a couple of beers about an hour earlier, and according to

Schwartz, the arresting police officer said he did not appear to be intoxicated. *Id.* at 3.

Schwartz was booked into SCDC at 2:30 p.m. *Doc. 68, Exhibit A.* Schwartz was charged

and his bail was set at $1000.00. *Doc. 36* at 3. Schwartz was apparently able to contact a

bail bondsman to post his bail, however, Defendant Joe Carrillo wished to hold

Schwartz for an eight (8) hour detox. *Id*. Schwartz maintains that he requested a

breathalyser and possibly a blood test at this time (*Id.* at 3-4), however Defendant

Carrillo denies this allegation (*Doc. 37* at 2). Schwartz was eventually released at 10:30

---

[3] The facts summarized in this section are taken from both Plaintiff's and Defendants' pleadings and attachments. At this stage of the proceedings, no evidentiary materials are in the record.

p.m. on March 31, 2005.  *Doc. 68, exhibit A*.  At 8:30 p.m. that same night, Schwartz'

wife's body was found murdered in Lemitar, New Mexico.  *Id*.  This is the factual basis

for Schwartz' first claim.

The remainder of Schwartz' claims stem from other periods of incarceration at

SCDC which Schwartz alleges occurred on the following dates:  (1) March 11, 2007,

through April 5, 2007 ("Spring Incarceration");[4] (2) July 12, 2007, through July 16, 2007

("Summer Incarceration"); and (3) August 9, 2007, through November 9, 2007 ("Fall

Incarceration").[5]

Schwartz alleges that he was only issued one hygiene kit during the span of all

---

[4] According to Schwartz, he was transferred to McKinley County Detention
Center from March 23, 2007 through April 3 or 4, 2007.  *Doc. 36* at 10.

[5] The record is unclear as to the exact dates and offenses that Schwartz was
serving time for.  The record contains two documents from state court pertaining to
Schwartz' incarcerations.  First, there is an Amended Judgment and Order Suspending
Sentence which was filed on August 10, 2007.  *Doc. 68, Exhibit G*.  This document states
that, on June 5, 2007, Schwartz pled guilty to Possession of a Firearm or Destructive
Device by a Felon.  *Id*.  Schwartz was sentenced to a term of eighteen months followed
by one year of parole; however, the imposition of that sentence was suspended and
Schwartz was placed on supervised probation for a period of eighteen months less pre-
sentence confinement credit which was to be determined by his Probation Officer.  *Id*.
The second document is an Order Revoking Probation, Imposing Sentence and for
Commitment filed November 5, 2007.  *Id., Exhibit H*.  This document states that, on
October 30, 2007, Schwartz admitted in open court to violating his probation.  *Id*.  As a
result, the Court revoked his probation and ordered that the New Mexico Department
of Corrections take Schwartz into custody to serve the remainder of his sentence which
was three-hundred and sixty-six days at that time.  *Id*.  Schwartz also states in his
Complaint that his probation officer had him arrested on July 12, 2007, and he was
released on July 16, 2007 (Summer Incarceration).  *Doc. 36 at 30*.

three of his incarcerations.  *Id.* at 5.  As a result, he had to borrow hygiene materials

from other inmates until he could purchase his own at the commissary.  *Id.* at 6.

Schwartz also maintains that SCDC has a policy of not allowing razors, and, as an

alternative, inmates were allowed to buy "Magic Shave" at the commissary.  *Id*. at 7.

Schwartz alleges that Magic Shave is only for black men and using it would irritate his

skin.  *Id*.  Because of this, he borrowed another inmate's smuggled razor with which he

cut himself.  *Id.* at 7.  He believes this incident led to him contract Hepatitis C.  *Id.* at 7-8.

 During his Spring Incarceration, Schwartz was issued one orange jumpsuit but

was not issued any underwear or socks which forced him to wash and use his own

underwear and socks.  *Id.* at 10.  Schwartz was also issued one towel, a mattress without

a sheet, one blanket, and shower sandals.  *Id*.  Schwartz maintains that his blanket was

insufficient to keep him warm at night, which caused him to catch a cold.  *Id*.  Also, the

lack of pillow caused him pain and discomfort.  *Id*.  Additionally, the last night of his

Spring Incarceration, Schwartz had to sleep in a detox tank on the floor with seven

other people.  *Id.* at 10-11.

 During his Summer Incarceration, Schwartz was issued one orange jumpsuit,

shower sandals, a towel, a mattress with sheets, and a blanket.  *Id.* at 11.  During his Fall

Incarceration, Schwartz was issued one orange shirt and pair of pants, a mattress with

sheets, a blanket, and shower sandals.  *Id*.  Schwartz also complains that he had to wash

his clothes in the shower, and, during all three of his incarcerations, SCDC only washed his clothes four times.  *Id.* at 12.

Schwartz maintains that, during all three of his incarcerations, ketchup was served out of a community bowl, he only received milk twice a week for breakfast, he never received juice or milk for lunch or dinner, and he never received any fruit, fresh or canned.  *Id.* at 14-15.  Additionally, there was one occasion during his Spring Incarceration when he was not issued a fork at dinner.  *Id.* at 14.  Schwartz also believes that SCDC does not appropriately test the inmate kitchen staff for tuberculosis, Hepatitis C, or any other infectious disease.  *Id*.

Schwartz maintains that, during part of his stay at SCDC, there was no hot water and the cold water smelled and tasted like lead.  *Id.* at 17.  Schwartz also complains that the lighting in the cells at SCDC was too low for him read, except for two hours during the afternoon.  *Id.* at 17-18.  Schwartz believes that the ventilation at SCDC was inadequate and speculates there may have been a problem with asbestos.  *Id.* at 19-20.

Schwartz alleges that he never received any recreation during any of his three incarceration periods at SCDC.  *Id.* at 21.  SCDC apparently has a "day room" which does not have any tables to eat on, play games, write, or work at.  *Id*.  Schwartz also explained that it was uncomfortable to sit at the table provided in his cell, and since he had to share that table with another inmate, he either had to eat his food at the table, on

8

his bunk, or on the floor.  *Id.* at 22.

Schwartz alleges that the medical situation at SCDC was inadequate and that the facility does not have any trained medical personnel of any kind.  *Id.* at 23.  During his Fall Incarceration, Schwartz requested non-prescription cold medication in the morning, and did not receive any until the evening.  *Id.* at 24.  Sometime in late October or early November, Schwartz was transported to the Socorro General Hospital Emergency Room because of severe pain in his right knee.  *Id.* at 25.  When he returned to SCDC, Schwartz alleges that he was apparently not given his medication according to the proper time schedule.  *Id.* at 26.

Schwartz also maintains there were two instances where he did not receive mail he was expecting from an associate as well as his lawyer.  *Id.* at 27-28.  Schwartz acknowledges that there were other instances where he received his mail with no problems.  *Id.*

Schwartz recounts that he received one phone call during his detainment on March 31, 2005, one phone call during his Spring Incarceration, one phone call during his Summer Incarceration, and three phone calls during his Fall incarceration.  *Id.* at 30-31.  Schwartz states that since he did not receive three phone calls at the beginning of his detainment and incarcerations, Defendants violated New Mexico state law, and this in turn violated his First Amendment rights.  *Id.*  Schwartz also believes the cost of

placing telephone calls at SCDC is excessive and a "major inconvenience." *Id.* at 31.

Schwartz alleges that SCDC "hardly ever allows copies for inmates," and that, as a result of this, he was unable to produce the required sixteen set of copies for his civil rights action until he was transferred to Torrance County Detention Facility. *Doc. 36* at 34. He also contends that SCDC and the court retaliated against him but revoking his probation. *Id.* Schwartz further alleges that the law library at SCDC was insufficient because it only had one law book accessible to inmates. *Id.* at 35. In addition, Schwartz asserts that he owned several law books to which he did not have access to because they were "illegally padlocked" in a storage facility. *Id.* Schwartz contends that if SCDC provided adequate access for inmates to legal information, Schwartz would have been able to obtain a shorter sentence. *Id.* at 36-37.

Lastly, Schwartz contends that SCDC confines inmates to their cells without any formal disciplinary hearings, thereby violating their due process rights. *Id.* at 37-38. Specifically, he alleges three instances during his Fall Incarceration when inmates where put in lock down because of other inmates misbehavior. *See id.* at 38-40.

## **Standard of Review**

This Court may dismiss a complaint under the Federal Rules of Civil Procedure, Rule 12(b)(6) for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937,

1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility,

in the context of a motion to dismiss, means that the plaintiff pled facts which allow

"the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Id.*  The *Twombly* evaluation requires two prongs of analysis.

First, the Court identifies "the allegations in the complaint that are not entitled to the

assumption of truth," that is, those allegations which are legal conclusions, bare

assertions, or merely conclusory.  *Id.* at 1949-51.  Second, the Court considers the factual

allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 1951.

If the allegations state a plausible claim for relief, such claim survives the motion to

dismiss.  *Id.* at 1950.

Because Schwartz appears in this case *pro se*, the Court construes his pleadings

and submissions liberally, holding them to a less stringent standard than is required of

a party represented by counsel.  *See Haines v. Kerner*, 404 U.S. 519, 520-521 (1972); *Hall v.

Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[The] court, however, will not supply

additional factual allegations to round out a plaintiff's complaint or construct a legal

theory on plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir.

1997) (citing *Hall*, 935 F.2d at 1110).  The Tenth Circuit has interpreted this rule to mean,

"if the court can reasonably read the pleadings to state a valid claim on which the

plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998). A dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F .3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

## Analysis

As a preliminary matter, the Court notes that no relief is available for Schwartz' claims against Defendant Socorro County Detention Center. A claim against this Defendant is equivalent to a suit against the State itself, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989), and thus Schwartz' allegations fail to state claims against "persons" for purposes of § 1983. *Will*, 491 U.S. at 71. "The Supreme Court held in *Will* that 'neither a State nor its officials acting in their official capacities are "persons" under § 1983. As [the Tenth Circuit] explained . . . , 'a governmental entity that is an arm of the state for Eleventh

12

Amendment purposes' is not a 'person' for section 1983 purposes." *McLaughlin v. Bd. of Tr. of State Coll.*, 215 F.3d 1168, 1172 (10th Cir. 2000) (citing *Harris v. Champion*, 51 F.3d 901, 905-06 (10th Cir.1995); *and cf. Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) (noting exception where complaint "seek[s] to prospectively enjoin a state official from violating federal law"). Thus, I recommend Schwartz' claims against this Defendant be dismissed.

Additionally, Schwartz' claims for injunctive relief are now moot because he is no longer confined at SCDC,[6] where the alleged violations occurred. *Cf. Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (holding prisoner's release mooted his claims seeking declaratory and injunctive relief as to conditions of confinement). Accordingly, I recommend Schwartz' claims for injunctive relief be dismissed as moot. The Court now moves forward with analyzing Schwartz' remaining allegations to determine if they state a claim under *Iqbal.*

Claim One:

The allegations of Schwartz' first claim arise out of an eight hour detainment at Socorro County Detention Center on March 31, 2005. *See Doc. 36.* Since Schwartz was a pretrial detainee at this time, the conditions of his confinement and treatment are governed by the standards of the Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520,

---

[6] *See Doc. 42.*

535 n.16 (1979).

  A.  *Fourth Amendment Violation*

  Here, construing Schwartz' complaint liberally, he first asserts that his Fourth

Amendment right to be free from unreasonable detention was violated by being

detained for an eight hour detoxification after his arrest for battery.  In *Anaya v.*

*Crossroads Managed Care System*, 195 F.3d 584 (10th Cir. 1999), the Tenth Circuit

considered whether detainees' Fourth Amendment rights had been violated when they

were seized by police, transported to an alcohol detoxification facility and then

detained.  The court noted that generally, detainment of intoxicated individuals is

permissible because the state "has an interest in protecting the public from the

intoxicated and the intoxicated from themselves." *Anaya*, 195 F.3d at 591.

  Here, Schwartz does not contest that the officers had probable cause to arrest him

for battery.  *Doc. 68* at 8.  He also admits that he told the arresting officer he had a

couple beers an hour prior to that arrest.  *Doc. 36* at 2-3.  However, Schwartz also

maintains that once he got to SCDC, he was presented with the opportunity to post bail,

which he was able to do, and yet he was still detained for detoxification purposes after

Officer Benavidez said he did not appear to be intoxicated.  *Id.*; *see Doc. 68* at 7.

  *Anaya* established that, "[a] legitimate-though-unrelated criminal arrest does not

itself give probable cause to detain [an] arrestee to detox," and an officer must have

probable cause to believe an intoxicated person is a danger to himself or others to justify his detainment for detoxification purposes.  195 F.3d at 592, 591; *see also McConney v. City of Houston*, 863 F.2d 1180, 1185 (5th Cir. 1989) (holding that "once a responsible officer actually does ascertain beyond a reasonable doubt that one who has been arrested is in fact not intoxicated, the arrestee should be released").  Accordingly, Schwartz has alleged sufficient facts to plead a claim for a Fourth Amendment violation and that part of Claim One should not be dismissed at this time.

      B.      *"Wrongful Death" and "Loss of Business" Claims*

Schwartz remaining Claim One allegations assert claims under § 1983 for the "wrongful death of his wife," and "loss of his business, 'Big Sky Naturals.'" *Doc. 36* at 2-5.  In regards to Schwartz' wrongful death allegation, the Court is wary that the death of Schwartz' wife is too attenuated to satisfy a proximate cause analysis.  However, at this stage in the proceedings, the record is bare regarding the incidents that occurred on March 31, 2005, and so the Court believes this issue should not be dismissed at this time, but should be considered once the record contains more factual information regarding this claim.

Schwartz' claim for loss of business, however, should be dismissed with prejudice.  To prevail on a claim pursuant to § 1983, Schwartz must allege that (1) the defendants "deprived him of a right secured by the Constitution of the United States"

15

and (2) "any such deprivation was achieved under color of state law." *Paul v. Davis*, 424

U.S. 693, 696-97 (1976) (footnote omitted).  Schwartz has not alleged any action by

Defendants that occurred on March 31, 2005, that deprived him of any Constitutional

right related to his business.  In fact, Schwartz maintains that the death of his wife led to

this loss of his business.  *Doc. 36* at 5.  Perhaps, if Schwartz were to prevail on his

wrongful death claim, he could seek damages for the loss of his business subject to a

causation analysis.  Based on Schwartz' allegations, however, the claim of loss of

business cannot stand on its own, so that claim should be dismissed with prejudice.

Conditions of Confinement Claims:

Schwartz' next three claims all pertain to conditions of confinement.  "Conditions

of confinement fall within the Eighth Amendment because they are part of the penalty

that criminal offenders pay for their offenses." *Penrod v. Zavaras*, 94 F.3d 1399, 1405

(10th Cir. 1996).  It is well-settled that the conditions prisoners face by virtue of their

incarceration can be "restrictive and even harsh" without running afoul of the Eighth

Amendment.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Accordingly, a prison official

violates the Eighth Amendment only when two requirements are met: 1) the

deprivation alleged is "sufficiently serious," *Wilson v. Seiter*, 501 U.S. 294, 298 (1991),

resulting in the denial of "the minimal civilized measure of life's necessities," *Rhodes*,

452 U.S. at 347; and 2) the prison official(s) acted with "deliberate indifference" to the

existence of any risk inherent in exposure to the challenged conditions. *Farmer v. Brennan*, 551 U.S. 825, 834 (1994); *see also DeSpain v. Uphoff*, 264 F.3d 965, 973-76 (10th Cir. 2001) (analyzing § 1983 claims under two-prong "*Farmer* test"). The first prong is analyzed objectively while the second is subjective, requiring that a defendant prison official have a culpable state of mind. *Id.* In order to prevail under an Eighth Amendment claim for constitutionally inadequate conditions of confinement, a prisoner must allege and prove both the objective component and subjective component associated with the deficiency.

A.    *Claim Two*

Construing Schwartz' second claim liberally, he alleges that he was not issued a hygiene kit during his Summer or Fall Incarceration.[7] *Doc. 36* at 6. He further states that he was unable to brush his teeth for six days before he was able to purchase a toothbrush at the commissary. *Id.* A deprivation of hygiene products without any corresponding injury does not state an Eighth Amendment violation. *Whitington v. Ortiz*, 472 F.3d 804, 808 (10th Cir. 2007); *see also Farmer*, 551 U.S. at 847. The fact that Schwartz had to go six days without brushing his teeth, while unfortunate, is not enough to state a valid Eighth Amendment violation. *Compare Dopp v. Ward*, 105 F.

---

[7] Schwartz states he had to borrow hygiene items from other inmates until he was able to purchase his own at the commissary. *Doc. 36* at 6.

App'x 259, 261 (10th Cir. 2004) ("Being deprived of hygiene products for eight days is not sufficiently serious to implicate the Eighth Amendment"), with *Penrod*, 94 F.3d at 1406 (holding prisoner's claim that prison officials' refusal to provide hygiene items causing "his gums to bleed and recede and tooth decay" states a claim for a violation of the Eighth Amendment).  Since Schwartz has not alleged any actual injury that resulted from being deprived of hygiene products, he has failed state a claim that is "sufficiently serious" that element of Claim Two should be dismissed.

The second part of Claim Two alleges that Schwartz was never issued a razor or nail clippers because it is SCDC's policy to prohibit those items.  *Doc. 36* at 6-7.  As an alternative, the facility allows prisoners to purchase "Magic Shave" from the commissary.  *Id.* at 7.  Schwartz contends that Magic Shave is exclusively for black men and that it causes burning and skin irritation "for people who are Caucasian."  *Id.* Because of this, Schwartz borrowed a smuggled razor from another inmate with which he gashed himself and he believes this led him to contract Hepatitis C.[8]  *Id.* at 7-8. Schwartz also says that Defendant Joe Carillo told him Hepatitis C could be contracted by sharing razors and that Carillo promised to get a clean razor for Schwartz.  *Id.* at 7.

The Supreme Court has recognized that "[l]awful incarceration brings about the

---

[8] Schwartz tested positive for Hepatitis C in December of 2007.  *See Doc. 68, exhibit E.*

necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Bell v. Wolfish*, 441 U.S. 520, 545-546 (1979). "The limitation on prisoners' privileges and rights also follows from the need to grant necessary authority and capacity to federal and state officials to administer the prisons," and "courts must exercise restraint in supervising the minutiae of prison life." *McKune v. Lile*, 536 U.S. 24, 37 (2002). Additionally, prison officials have broad administrative and discretionary authority in managing and controlling prisons. *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987).

While inmates must be provided with adequate hygienic materials, *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981) , Schwartz fails to allege why the lack of a razor posed a health or safety risk to him, as required to allege a violation under the Eighth Amendment for inhumane conditions of confinement. *See Gross v. Koury*, 78 F. App'x 690, 695 n.4 (10th Cir. 2003) (district court properly dismissed claim that denial of razor was Eighth Amendment violation because Plaintiff did not allege why this posed a health or safety risk to him); *see also Hall v. Jarrigan*, 2008 WL 5377893, at *4 (E.D.Tenn. 2008) (holding Plaintiff failed to state a claim when he was denied a new razor because the Eighth Amendment prohibits only *extreme* deprivations). Schwartz claims only that the permitted alternative shaving device, the Magic Shave, caused him discomfort. This allegation is insufficient to rise to the level of

an Eighth Amendment violation. *See Whitington v. Ortiz*, 307 F. App'x 179, 187 (10th

Cir. 2009) ("Mere discomfort or temporary adverse conditions which pose no risk to

health and safety do not implicate the Eighth Amendment") (citing *Hudson v. McMillian*,

503 U.S. 1, 9 (1992)).  Schwartz does allege that he believes he contracted Hepatitis C by

borrowing a smuggled razor from another inmate.  However, this consequence is a

result of Schwartz' violation of the institution's rules, not of any action by Defendants.

Accordingly, I recommend this portion of Claim Two be dismissed with prejudice.

 B. *Claim Three*

 Construing Schwartz' third claim liberally, he alleges three Eighth Amendment

violations: 1) he had to sleep in a crowed detox tank from April 3 or 4, 2007, until April

5, 2007 (*Doc. 36* at 10-11); 2) the clothes and blankets he was issued were inadequate

during his Spring, Summer, or Fall Incarcerations (*Id.*); 3) SCDC only washed his clothes

four times total during his Spring, Summer, and Fall Incarcerations forcing Schwartz to

have to wash his clothes while taking a shower (*Id.* at 12).

 Construing these allegations in the light most favorable to Schwartz, none of

these facts state a claim that amounts to an Eighth Amendment violation.  As stated

above, in order to prevail under an Eighth Amendment claim for constitutionally

inadequate conditions of confinement, a prisoner must allege and prove both the

objective component and subjective component associated with the deficiency.

Since this issue is being considered under a 12(b)(6) standard, Schwartz must allege enough facts to meet the requirements of the two prong test.  Here, while it may have been undesirable to sleep in a crowded detox tank, Schwartz does not allege that the conditions posed a substantial risk of serious harm other than mere discomfort.  *See Whitington*, 307 F. App'x at 187; *see also Antonelli v. Sheahan*, 81 F.3d. 1422, 1430 (7th Cir. 1996) (upheld District Court's dismissal for failure to state a claim where inmate alleged that he was forced to sleep on the floor for one night due to overcrowding when situation was unintended and temporary).  Accordingly, I recommend this portion of Claim Three be dismissed.

With respect to his other Claim Three allegations, at the beginning of each of his incarcerations, Schwartz admits he was given at least one jumpsuit, a mattress, a blanket, and shower sandals, and therefore he has not alleged that he was deprived of "the minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988) (pre-trial detainee did not state claim under § 1983 when he was deprived of a pillow to sleep on).

Lastly, the fact alone that Schwartz had to wash his own clothes does not amount to serious harm or rise to the level of cruel and unusual punishment.  Schwartz has not alleged that he suffered any serious harm or threat to his health as a result of SCDC only washing his clothes four times.  Accordingly, Schwartz' has failed to allege the

objective component of conditions sufficiently serious to implicate the Eighth

Amendment with regard to these claims and they too should be dismissed.

C.      *Claim Four*

Schwartz claims that the food conditions at SCDC are "unsanitary, inadequate,

and the amount of food served is not sufficient." *Doc. 36* at 14.  The State is required to

provide inmates with a "healthy habilitative environment." *Ramos*, 639 F.2d at 570.

"This includes providing nutritionally adequate food that is prepared and served under

conditions which do not present an immediate danger to the health and well being of

the inmates who consume it." *Id.* at 570-71.  A "substantial deprivation of food" may be

sufficiently serious to state a claim under the Eighth Amendment. *Thompson v. Gibson*,

289 F.3d 1218, 1222 (10th Cir. 2002).

In this case, Schwartz does not allege a substantial deprivation of food.  He

simply says that the portions were small, he only received milk three times a week, he

never received any kind of fruit, and that ketchup was served out of a communal bowl.

*Doc. 36* at 14-15.  Schwartz fails to allege facts showing a personal deprivation of "the

minimal civilized measure of life's necessities" sufficient to establish the objective

element of a claim for cruel and unusual punishment.  Furthermore, there is nothing in

Schwartz' pleadings to indicate that specific individuals charged as Defendants knew

about the allegedly small food portions and failed to remedy the situation; he therefore

fails to allege the subjective element of deliberate indifference.

Additionally, Schwartz' allegation that SCDC does not appropriately test the inmate kitchen staff for tuberculosis, Hepatitis C, or any other infectious disease is a conclusory allegation and he cites no facts to back up this assertion. *See Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995) ("Even *pro se* litigants must do more than make mere conclusory statements regarding constitutional claims"). Accordingly, this Court should dismiss Claim Four for failure to state a claim.

Claim Five:

Schwartz alleges that the water, lighting, and ventilation at SCDC constitute an "environmental hazard" and he believes there is a possibility of asbestos in the facility. *Doc. 36* at 16-20.

    *A.    Water, Lighting and Ventilation:*

Schwartz specifically alleges that, during his Spring Incarceration, the hot water did not work and the cold water tasted and smelled as if it contained lead. *Id.* at 17. This caused Schwartz to experience "continuous dehydration" because he could not swallow the water at SCDC. *Id.* He also claims that when he spoke to an inmate officer about this, the officer told him that he does not consume the water at SCDC. *Id.*

Schwartz claims that the lighting at SCDC was "deplorable" and only functional

for two hours a day during his entire confinement.  *Id.* at 17-18.  As a result of this,

Schwartz has a difficult time reading and the lack of light caused a "severe" strain on

his eyes.  *Id.* at 18.  He also maintains that the ventilation ducts at SCDC are clogged and

that the air conditioning and heating at SCDC were not operational "for a period of

time," but he does not specify how long that time period was.  *Id.* at 19.  Schwartz

claims that this results in "a situation of being extremely hot, stuffy, stale and stagnant,"

and that he experienced difficulty breathing and several colds because of these

conditions.  *Id.*

Under the Eighth Amendment, "a state must provide an inmate with shelter

which does not cause his degeneration or threaten his mental and physical well being."

*Ramos*, 639 F.2d at 568.  Prison officials must provide inmates with living space that has

"reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities

(i.e., hot and cold water, light, heat, plumbing)." *Id.* at 568.  The Tenth Circuit has

recognized long-term deprivation of fresh air as a sufficient grounds to state a claim for

relief under 42 U.S.C. § 1983.  *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994); *Bailey

v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) (*per curiam*).

In *Ramos*, the record indicated that the prison failed to meet the "minimal health

and safety needs of the prisoners", in part, because, "inadequate ventilation, especially

in the cells and shower areas, results in excessive odors, heat, and humidity with the

effect of creating stagnant air as well as excessive mold and fungus growth, thereby

facilitating personal discomfort along with health and sanitation problems." *Id.* at 569.

The Tenth Circuit sustained those findings under a § 1983 action, finding the prisoner's

conditions to be "'grossly inadequate and constitutionally impermissible.'" *Id.* at 570.

In light of these holdings, Schwartz has alleged sufficient facts to clear the

minimal standard of stating a claim. Accordingly, I recommend this part of Claim Five

not be dismissed at this time.

B.      *Asbestos:*

Also in Claim Five, Schwartz alleges that SCDC "appears on the surface to

possible [sic] having a problem with asbestos." *Doc. 36* at 20.  Here, Schwartz does not

allege facts sufficient to establish that he was exposed to asbestos.  His allegations are

based solely on conjecture, and even assuming SCDC did have asbestos, Schwartz must

have alleged that he was exposed to "unreasonably high levels of asbestos" in order to

have sufficiently stated a viable claim for relief.  *See McNeil v. Lane*, 16 F.3d 123, 125 (7th

Cir.  1993) (holding that "exposure to moderate levels of asbestos is a common fact of

contemporary life and cannot, under contemporary standards, be considered cruel and

unusual."); *C.f. Helling v. McKinney*, 509 U.S. 25, 35-36 (1993) (holding that Plaintiff

stated a cause of action when he alleged he was exposed to "unreasonably high levels"

of tobacco smoke which posed an unreasonable risk of serious damage to his future

25

health).   Accordingly, this portion of Claim Five should be dismissed.

Claim Six:

Schwartz "contends he never received any outside recreation during any of the three (3) incarceration periods." *Doc. 36* at 21.  The Tenth Circuit, and other courts, have recognized that "some form of regular outdoor exercise is extremely important to the psychological and physical well[-]being of inmates." *Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987); *accord Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992) ("[G]enerally a prisoner should be permitted some regular out-of-cell exercise."); *Davenport v. DeRobertis*, 844 F.2d 1310, 1314 (7th Cir. 1988) (upholding decision by district court that allowing inmates in segregation unit only one hour of out-of-cell exercise each week violated the Eighth Amendment).  In *Housley v. Dodson*, 41 F.3d 597, 599 (10th Cir. 1994), *abrogated on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996), the Tenth Circuit stated that "[a]lthough we have never expressly held that prisoners have a constitutional right to exercise, there can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment."  The court further concluded that an inmate who alleged that he had received only thirty minutes of out-of-cell exercise in three months stated an Eighth Amendment claim.  *Id.* at 599.

In view of these holdings and Schwartz' contention that he never received *any*

outside recreation, the Court believes Schwartz has alleged enough facts to state a claim, and recommends that this claim not be dismissed at this point in the proceedings.

However, the rest of Schwartz' allegations contained within Claim Six, namely that he could not sit comfortably in his cell and that the "Day Room" did not have a table to work, play or eat at, should be dismissed as they do not allege that the conditions posed a substantial risk of serious harm or that Schwartz was deprived of "the minimal civilized measure of life's necessities." *See Rhodes*, 452 U.S. at 347. Accordingly, I recommend that those portions of Claim Six should be dismissed.

Claim Seven:

The majority of Schwartz' Claim Seven allegations stem from his visit to the emergency room "sometime around the last week in October, or the first week of November, 2007." *Doc. 36* at 25.  Schwartz had replacement surgery on his knee in October of 2006, and he contends that, as a result, he suffers extreme pain from time to time.  *Id.*  While at SCDC, he was taken to the emergency room because the pain in his knee was "excoriating."  *Id.*  The physician who treated Schwartz told him she could not help ease the pain since she was prohibited from prescribing narcotic pain medication to him because of a policy at SCDC.  *Id.* at 26.  She did inject Schwartz with pain medication and wrote him a prescription for 800 milligrams of Ibuprofen.  *Id.*  Schwartz contends that SCDC's failure to timely give him over the counter medication, SCDC's

failure to give him his prescribed medication on time, SCDC's failure to have any medically trained personnel of any kind, and SCDC's policy of prohibiting doctors from prescribing narcotic pain medication constitute a violation of his Eighth Amendment rights and Defendants acted with "deliberate indifference" with regard to the incidents described above.  *Id.* at 24-26.

"It is well established that prison officials violate the Eighth Amendment if their 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.'"  *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)), *abrogated on other grounds by Twombly*, 550 U.S. 544.  The "deliberate indifference" standard has two components, one objective and one subjective.  *See Wilson v. Seiter*, 501 U.S. 294, 299-04 (1991).  In order to prevail on his Eighth Amendment claim, Schwartz must make a two-part showing: (1) that the medical need was "sufficiently serious," and (2) that the offending officials acted with a culpable state of mind in that they knew or should have known about the serious medical need and intentionally refused to provide medical care.  *Farmer*, 511 U.S. at 834 (1994).

A medical condition is "serious" for purposes of the Eighth Amendment if it is one "that a reasonable doctor or patient would find important and worthy of comment or treatment . . . [or if it] significantly affects an individual's daily activities or . . .

28

[includes] the existence of chronic and substantial pain." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).  A delay in providing medical treatment to a prisoner can constitute an Eighth Amendment violation, but only if the prisoner shows that the delay resulted in substantial harm.  *White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993).

Here, Schwartz' contention that he asked for non-prescription medication on the morning of October 2, 2007, and did not receive any medication until the evening, fails on its face to state a cognizable claim under § 1983.  First, the Correction Officers that Schwartz asked for the medication are not charged as defendants in this action.  *See Doc. 36* at 24 (Schwartz stating that he asked Mike Gonzales, Theresa Pino, and Alex Paz for the cold medication).  It is well established that personal participation is an essential allegation in a § 1983 claim.  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  Since Schwartz has not sued the Correction Officers responsible for not giving him the medication, and he does not allege any personal involvement by any of the named Defendants, he has failed to state a cause of action.  *Id.* ("Because Mr. Mitchell failed to sue the parties responsible for the beating and does not allege any personal involvement of the parties before the court, we affirm the district court's dismissal of Mr. Mitchell's claims for failure to state a cause of action that the beating violated his Eighth Amendment Rights").  Secondly, even if Schwartz had alleged that one of the named

Defendants was responsible for this alleged action, a delay in administering over-the-counter medication does not "involve [an] unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976), and Schwartz does not allege that he experienced substantial harm as a result of this delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm"). Accordingly, Schwartz has not alleged facts sufficient to state a viable Eighth Amendment claim and I recommend this portion of Claim Seven be dismissed with prejudice.

Next, Schwartz alleges that he was not administered his doctor prescribed ibuprofen at the appropriate times. *Doc. 36* at 26. A plaintiff can state a valid claim of medical mistreatment under the Eighth Amendment by alleging "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006) (internal quotation marks omitted), *abrogated on other grounds by Twombly*, 550 U.S. 544. Here, the fact that Schwartz alleges he was not given doctor prescribed medication at the required time constitutes a sufficiently serious act on the part of the Defendants. However, Schwartz does not allege what Defendants were in charge of giving him his prescription medication, and then failed to do so. At the end of Claim Seven, Schwartz merely states

"[t]he Plaintiff is suing all the Defendants in their official and individual capacities, except for Steven Farmer and Evangel Maldonado . . ." *Doc. 36* at 27.  Since he does not allege any personal participation by any of the defendants, Schwartz fails to state a claim.  *See Bryson*, 534 F.3d at 1286; *see also Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (holding that personal participation is indeed an essential allegation in a § 1983 claim).  Accordingly, I recommend this portion of Claim Seven be dismissed.

Next, Schwartz alleges that SCDC "does not have any trained medical personal of any kind." *Doc. 36* at 23.  While the court is skeptical of this factual allegation, if true, it would state a claim and should not be dismissed at this time.  *See Ramos*, 639 F.2d at 575-77 (a Correctional Institution that has 1400 inmates needs an on-site primary physician coverage for 40 hours per week, a registered nurse on all three shifts, and more than three physician assistants in a 24-hour infirmary); *see also Battle v.  Anderson*, 457 F. Supp. 402, 434 (E.D. Okla 1978), *judgment aff'd in part, rev'd in part on other grounds*, 993 F.2d 1551 (10th Cir. 1993) (there must be one full-time doctor, "adequate" support staff, and 24-hour, 7-day-a-week nursing for facility with over 3000 inmates).  Accordingly, I recommend this part of Claim Seven not be dismissed at this time.

Lastly, Schwartz' Claim Seven deals with SCDC's policy of not allowing doctors to issue Narcotic medication to inmates.  *Doc. 36* at 26.  Schwartz contends that SCDC has this policy for two reasons: 1) "the facility does not have properly trained medical

personal to distribute the medication;" and 2) "the employees might steal the medication, which has happen [sic] several times in the past, according to a few staff members." *Id.* Schwartz alleges he suffered harm as a result of this policy because the pain in his leg could not be alleviated by the ibuprofen administered to him by the doctor at the emergency room. Given the lack of information in the record pertaining to this alleged policy by SCDC, I recommend this part of Claim Seven not be dismissed at this time.[9]

Claim Eight:

Schwartz contends that mail is not delivered everyday at SCDC and that there were two occasions where he did not receive legal correspondence. *Doc. 36* at 27. Specifically, he claims he had an "associate" order a Section 1983 application for him that never arrived in the mail. *Id.* Schwartz also contends that Defendant Bernice Vallejos, who was in charge of incoming and outgoing mail at SCDC, went on vacation from October 29, 2007, until November 7, 2007, and when she returned, she informed him that there had not been any incoming or outgoing mail during her absence. *Id.* at 27-28. Schwartz contends that through these incidents, his First Amendment rights

---

[9] The Court should consider this issue once the record contains more information regarding Schwartz' trip to the emergency room and information pertaining to SCDC's policy of not allowing doctors to administer narcotic medication to inmates, if any such policy exists.

were violated.  *Id.* at 29.

Schwartz' factual proof that mail is not delivered everyday stems from an incident where Schwartz asked his attorney's secretary to send him several legal documents "on either Friday, August 31st, 2007, or on Tuesday, September 4th, 2007," which he claims he never received.  *Doc. 36* at 28.  Schwartz then asked the secretary to re-mail the items on September 25, 2007, and he received the documents on October 2, 2007.  *Id.*  These facts are insufficient to state a valid First Amendment claim.  As an initial matter, Schwartz does not allege that the attorney's secretary actually sent the documents the first time.  Secondly, Schwartz has not alleged that his mail was not processed or that his incoming mail was subject to any sort of regulation or censorship on the part of Defendants, which are the basic components of First Amendment violations related to prison inmate mail.  *See, e.g., Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir. 1998) ("A refusal to process any mail from a prisoner impermissibly interferes with the addressee's First and Fourteenth Amendment rights"); *Thornburgh v. Abbott* 490 U.S. 401, 409 (1989) (adopting a "reasonableness" standard of review for alleged First Amendment violations when regulations restricting incoming mail are in place).  Additionally, Schwartz has not alleged that his access to the courts was impeded by interference with his legal mail.  *See Lewis v. Casey*, 518 U.S. 343, 348-55 (1996) (discussing requirements for establishing that access to the courts was hindered by mail

33

interference); *see also Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996).

Instead, Schwartz asserts that "mail is not delivered everyday," which is simply a conclusory allegation.  As such, it does not survive a 12(b)(6) standard of review and I recommend this portion of Claim Eight be dismissed at this time.  *See Swanson*, 750 F.2d at 813; *Zavaras*, 63 F.3d at 972 ("Even *pro se* litigants must do more than make mere conclusory statements regarding constitutional claims").

Claim Nine:

Schwartz alleges that he was not permitted to make three telephone calls in compliance with New Mexico State law during his pretrial detainment as well as his incarceration.  *Doc. 36* at 30 (referencing N.M. Stat. Ann. § 31-1-5).  He also complains that the cost of making telephone calls at SCDC is excessive.  *Id.* at 31.  Schwartz states he was unable to call his sister and other friends who live outside the state.  *Id.* Schwartz alleges that "the failure to provide inexpensive telephone access," along with SCDC's failure to provide him with three telephone calls as prescribed by § 31-1-5 constitutes a violation of his First Amendment rights.  *Id.* at 32.

A.      *N.M. Stat. Ann. § 31-1-5*

The state statute cited by Schwartz declares that:

Following arrest, any person accused of a crime is entitled to have reasonable opportunity to make three telephone calls beginning not later than twenty minutes after the time of arrival at a police station, sheriff's office or other place of detention. Nothing in this subsection limits any

> right to make telephone calls at any time later than twenty minutes after
> the time of arrival at the police station.

N.M. Stat. Ann. § 31-1-5 (West 2009). Schwartz maintains that he was only allowed one phone call on March 31, 2005, he was only allowed one phone call during his Spring Incarceration, he was only allowed one phone during his Summer Incarceration, and he was eventually allowed all three phone calls during his Fall Incarceration. *Doc. 36* at 30-31. Schwartz alleges that being denied three phone calls during these time periods constitutes a violation of state law which in turn violates his First Amendment rights. *Id.* at 32.

Schwartz' argument premised on the state statute fails because, regardless of the statute's requirement, the "right to make a phone call immediately upon arrest is not a recognized property right, nor is it a traditional liberty interest recognized by federal law." *Harill v. Blount County, Tenn.*, 55 F.3d 1123, 1125 (6th Cir. 1995). In *Harill*, the plaintiff was arrested and denied a requested phone call to her father before her name was entered on record. *Id.* Just like Schwartz, the plaintiff alleged that this denial violated a state statute which held that no arrested person shall have their name entered on any record until they have successfully completed a phone call to their person of choice. *Id.* Additionally, she maintained that the state statute created a right under the Fourteenth Amendment Due Process Clause. *Id.* The court rejected this argument holding:

> A state statute cannot "create" a federal constitutional right. Some state
> statutes may establish liberty or property interests protected by the Due
> Process Clause, but this statute creates neither a federally protected liberty
> or property interest . . . . The right to make a phone call immediately upon
> arrest is not a recognized property right, nor is it a traditional liberty
> interest recognized by federal law. The violation of a right created and
> recognized only under state law is not actionable under § 1983.

*Id.* (citations omitted).

Here, while Defendants may be in violation of state statutory law,[10] section 1983

only contemplates constitutional violations and Schwartz has failed to allege facts to

support that there was a violation of a protected constitutional right. Consequently, I

recommend this portion of Claim Nine be dismissed with prejudice.

   B.  *Price of Telephone Calls*

The constitutional right at issue here has been described as the right to

communicate with people outside prison walls, and "a telephone provides a means of

exercising this right." *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002). When

dealing with prisoners' access to phone calls, courts have held that there is no obligation

on the part of the state to subsidize phone service. *See, e.g., Johnson v. State of Cal.*, 207

F.3d 650, 656 (9th Cir. 2000). However, there may be a claim if an inmate has alleged

_____

   [10] The Court does not have the requisite jurisdiction to consider this claim, and
thus does not opine whether there was an actual state law violation. *See Pennhurst State
Sch. & Hosp. v. Halderman*, 465 U.S. 89, 122-23 (1984) (holding that a federal court cannot
take supplemental jurisdiction over claimed state law violations by state officers).

facts that show that the "rate charged is so exorbitant as to deprive prisoners of phone access altogether." *Id.*

Here, Schwartz has not alleged facts to support such a claim. Schwartz states that he was unable to place <u>long-distance</u> calls to his sister and other out-of-state friends, but no where does he allege that the cost of placing a call prohibited him from phone access altogether. *See id.*; *see also Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) (when inmate did not allege that he was ever denied access for a specific emergency or to call his lawyer he failed to state a claim). Accordingly, I recommend this claim be dismissed at this time.

<u>Claim Ten</u>:

There are several allegations in Schwartz' tenth claim: (1) SCDC "hardly ever allows copies for inmates," and would have denied him access to a copy machine if they had known it was to make copies for the present § 1983 lawsuit, even if Schwartz had paid for the copies; (2) "[t]he law library and/or access to any legal material is virtually non-existent at Socorro County Detention Center;" (3) Schwartz' storage facility containing law books including "Prisoners Self-Help Litigation Manual," was "illegally" padlocked which interfered with Schwartz having access to such books; and (4) the "court and/or county retaliated [against Schwartz] by re-sentencing [him] to a new and longer term of imprisonment," after which Schwartz requested to be sent to

New Mexico Corrections Department for the remainder of his sentence and Defendants retaliated by denying this request because they knew Schwartz would have access to legal information there to bring his § 1983 claim.  Schwartz maintains that these incidents violated his Sixth Amendment right of access to the courts and he alleges that Defendants acted with deliberate indifference.  *Doc. 36* at 34-37.

  A. *Denial of Access to Copy Machine*:

  Photocopy access is not an independent constitutional right, but exists only where necessary to the prisoner's right to seek legal redress. *See Carper v. DeLand*, 54 F.3d 613, 616-17 (10th Cir. 1995) ("a state has no affirmative constitutional obligation to assist inmates in general civil matters"); *Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir. 1983) ("[T]he right to Xerox" exists for the purpose of filing court documents where duplication is required).  Here, Schwartz states, that SCDC "unequivocally *would have* denied Plaintiff copies of lawsuit against Defendants, and even [sic], if the Plaintiff paid for the copies.  *Doc. 36* at 34 (emphasis added).  This statement is an insufficient conclusory allegation.  *See Hall*, 935 F.2d at 1110.  Schwartz does not state that he asked to make copies and was denied the opportunity to do so, nor does he name any Defendants that told him he would not be allowed to make copies if he tried.  Moreover, the docket sheet demonstrates that Schwartz' access to the Courts is not being compromised.   As such, this claim is without merit and I recommend it be

dismissed with prejudice.

    *B.*   *Law Library Claim*:

    General allegations of the inadequacy of a prison legal library are insufficient

to state a claim that a plaintiff has been denied access to the courts. *Lewis v. Casey*,

518 U.S. 343, 351 (1996). The Supreme Court has made clear that the Sixth Amendment

does "not create an abstract free-standing right to a law library or legal assistance." *Id.*

at 350. Thus, in order to maintain a valid denial of access to the courts claim, a Plaintiff

is required to "'demonstrate that the alleged shortcomings in the library or legal

assistance program hindered his efforts to pursue a legal claim.'" *Penrod v. Zavaras*, 94

F.3d 1399, 1403 (10th Cir. 1996) (*per curiam*) (quoting *Lewis*, 518 U.S. at 351). Here

Schwartz states that the lawbook on hand at the library was not "appropriate [in

helping him] to litigate a 42 U.S.C. Section 1983 Civil Rights Action." *Doc. 36* at 35.

However, Schwartz has not alleged how those inadequacies produced a negative effect

on his ability to pursue a legal claim. *See Lewis*, 518 U.S. at 351. Schwartz makes only

the conclusory statement that, if SCDC "would have provided adequate and sufficient

access to legal information and materials, Plaintiff would not be serving an illegal

sentence." *Doc. 36* at 36. The "illegal sentence" of which Schwartz complains is the

sentence he received when his state probation was revoked. *See infra* pp. 41-42. Not

only is this statement entirely conclusory, but blaming the lack of a law library for the

length of his sentence is utterly meritless given that Schwartz was represented by

counsel during his probation revocation proceedings.  Furthermore, Schwartz never

alleges that he was prevented from preparing his initial pleadings for a claim as a result

of his lack of access to a law library.  Consequently, Scwartz fails to raise a proper "right

of access" claim because the Court has emphasized that it has not extended the right of

access "further than protecting the ability of an inmate to prepare a petition or

complaint."  *Bee v. Utah State Prison*, 823 F.2d 397, 398-99 (10th Cir. 1987) (*citing Wolff v.

McDonnell*, 418 U.S. 539, 576 (1987)).

Finally, Plaintiff makes no allegations against Defendants which

affirmatively link any of them to any of the various violations.  *See Butler v. City of

Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  Absent such facts, Schwartz has failed to

state a claim and I recommend this portion of Claim Ten be dismissed.

C.        *Books Padlocked*:

Schwartz alleges that the Socorro Division of the New Mexico Corrections

Department along with Judge Sweazea of the Seventh Judicial District Court of New

Mexico "illegally" padlocked Schwartz' storage facility which denied him access to law

books that could have helped him bring this claim.  *Doc. 36* at 35.  Schwartz fails to state

a claim because he "does not allege sufficient participation in the alleged wrongs" by

any of the defendants.  *Bryson*, 534 F.3d at 1286.

40

To maintain a stated claim under § 1983, Schwartz must allege some personal involvement by Defendants in the constitutional violation.  *See id.* at 1286-88.   Here, Schwartz merely states that "the Socorro Division of the New Mexico Corrections Department, along with the Assistance of the Honorable Kevin R. Sweazea . . . illegally padlocked" his storage facility.  *Doc. 36* at 35.   Judge Sweazea is not a party to this action and so allegations of his personal involvement do not satisfy the "personal involvement" requirement.  Schwartz fails to state who, within the Socorro Division, padlocked his books, whether he ever asked to have access to them and was denied, or under what Defendant's authority this action was done.  Accordingly, I recommend this claim be dismissed.

> D.        *Transfer Request and Court Retaliation:*

In this portion of Claim Ten, it is difficult to decipher what exactly Schwartz is alleging.[11]  Schwartz seems to maintain that SCDC retaliated against him for trying to bring his § 1983 claim by denying a requested transfer to New Mexico Corrections Department (where there were better law books), and by getting the state court to

---

[11] A *pro se* complaint must be given a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, the court cannot assume the role of advocate for the pro se litigant, and "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

revoke his probation and re-sentence him to eighteen additional months in jail.[12]  *Doc. 36* at 35-36; *Doc. 68* at 26-27.

The Tenth Circuit has recognized that inmates must not be subject to retaliation or harassment for the pursuit of their legal claims.  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990).  To withstand dismissal, however, a plaintiff must plead specific facts showing retaliatory motive.  *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).  Standing alone and without supporting factual allegations, temporal proximity between an alleged exercise of one's right of access to the courts and denial of request for transfer to another prison does not constitute sufficient circumstantial proof of retaliatory motive to state a claim.  *See, e.g., Weatherall v. Scherbarth*, 208 F.3d 228, 2000 WL 223576, at *2 (10th Cir. 2000); *Wright v. McCotter*, 172 F.3d 880, 1999 WL 76904, at *1 (10th Cir. 1999).  Schwartz' retaliation claim is not supported by any factual allegations beyond Schwartz' conclusory statement.  Furthermore, Schwartz makes no allegations against any particular Defendant affirmatively linking any of them to the alleged violations.  *See Butler*, 992 F.2d at 1055.  Accordingly, I recommend this portion of Claim

---

[12] In his Response to Defendants Motion to Dismiss, Schwartz claims that the revocation of his probation and re-sentencing of eighteen months violated the Double Jeopardy Clause.  *Doc. 68* at 27.  "[W]here an inmate seeks . . . relief challenging the fact of his conviction or the duration of his sentence . . . . [s]uch claims fall within the 'core' of habeas corpus and are thus not cognizable when brought pursuant to § 1983."  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004).

Ten be dismissed with prejudice.

Regarding the reason for the revocation of his state probation, the Order Revoking Probation clearly states that Schwartz' probation was revoked because he admitted in open court to violating his probation. *See Doc. 68, exhibit H*. Thus, the contention that the county or court was retaliating against him in this regard is completely frivolous and this claim should be dismissed with prejudice.

Claim Eleven:

Schwartz alleges he was subjected to lock-down on two different occasions and had limited access to his cell because of his cell mate's lock down on one other occasion in violation of his Due Process and Eighth Amendment Rights. *Doc. 36* at 37-41. The first lock-down occurred when an inmate was found with a cell phone on September 1, 2007, beginning at 8:00 a.m. and it did not end until September 2, 2007, at 2:30 p.m. *Id.* at 38. The second incident occurred on October 6, 2007, when an inmate smuggled contraband into the jail. *Id.* at 39. The lock-down started at 10:00 p.m and ceased at the end of the day on October 7, 2007. *Id.* at 39-40. Schwartz states that he was allowed out of his cell for only fifteen minutes to shower while the lock-down was in place. *Id.* at 39. The last lock-down incident involves Schwartz' cell mate and not Schwartz himself. *Id.* at 40. Schwartz complains that while his cell mate was in lock-down, he had limited access to the cell which left him with no where to relax or sit. *Id.*

at 40-41.

It is well established that lawfully incarcerated persons retain only a narrow range of protected liberty interests, *Abbott v. McCotter*, 13 F.3d 1439, 1442 (10th Cir. 1994), and "[t]he Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed." *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quotation marks and citation omitted). Generally, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence," and therefore, "administrative segregation is the sort of confinement . . . inmates should reasonably anticipate receiving at some point in their incarceration" and does not involve an interest independently protected by the Due Process Clause. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Additionally, the Due Process Clause does not create a right for prisoners to leave the area around their cells or a right to be free from periods of lock-downs. *Ricks v. Boswell*, 149 F.3d 1191, 1998 WL 339662, at *1 (10th Cir. 1998).[13]

---

[13] The Court recognizes that *Boswell* is an unpublished opinion, but is persuaded by the factual similarities between that case and Schwartz' eleventh claim. In *Boswell*, the Plaintiff was being subjected to lock-downs as a result of other inmates' behavior that lasted up to twenty-two days. 1998 WL 339662, at *1. The Plaintiff argued that lock-downs were improper under the Due Process Clause because Plaintiff had an "inherent right to be free from punishment for acts committed by others." *Id.* (citations omitted). The Tenth Circuit disagreed citing several Supreme Court cases including *Sandin*, and further stated, "[e]ven assuming the lockdowns were punitive, as Mr. Ricks alleges, they do not 'present a dramatic departure from the basic conditions of [his] . . .

Accordingly, since Schwartz has failed to show that he was deprived of a liberty interest, and thus, has failed to state a claim for which relief could be granted, I recommend Claim Eleven be dismissed with prejudice.

## Conclusion

As stated above, dismissal "without affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley*, 246 F .3d at 1281-82 (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).  Here, Schwartz has had three opportunities to amend his Complaint, along with an opportunity to file a response to Defendants Motion to Dismiss, specifically addressing the issue of whether or not he has stated a valid claim. *See Docs.  18, 26, 32 & 68.*  Therefore, the Court concludes that further opportunity to amend would be futile.  Accordingly, the Court believes the claims which are recommended for dismissal should be dismissed with prejudice.

Wherefore,

**IT IS HEREBY RECOMMENDED** that

All claims against Defendant Socorro County Detention Center be dismissed

---

sentence.'" *Id.*  (citing *Sandin*, 515 U.S. at 485)  As a result, the court held that Plaintiff failed to state a claim for which relief could be granted.  *Id.* at *2.

as to that Defendant, that Defendant Socorro County Detention Center be dismissed as

a Defendant, and that Schwartz' claim for injunctive relief be dismissed as moot.


**IT IS FURTHER RECOMMENDED** that

1.  Claim One be dismissed with regards to Schwartz' loss of business claim;

and the remainder of Claim One not be dismissed at this time.

2.  Claim Two be dismissed in its entirety.

3.  Claim Three be dismissed in its entirety.

4.  Claim Four be dismissed in its entirety.

5.  Claim Five be dismissed with regard to Schwartz' claim regarding

asbestos; and the remainder of Claim Five not be dismissed at this time.

6.  Claim Six be dismissed with regard to Schwartz' allegations that his cell

was uncomfortable and SCDC's Day room was inadequate; and the remainder of Claim

Six not be dismissed at this time.

7.  Claim Seven be dismissed with regard to Schwartz' claim that he was

denied over-the counter medication and that he was not given his prescription

medication on time; and the remainder of Claim Seven not be dismissed at this time.

8.  Claim Eight be dismissed in its entirety.

9.  Claim Nine be dismissed in its entirety;

10. Claim Ten be dismissed in its entirety.

11. Claim Eleven be dismissed in its entirety.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the ten-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

UNITED STATES MAGISTRATE JUDGE