IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LEO J.  SCHWARTZ, III,

    Plaintiff,

v.            CIV 07-1106 RB/GBW

JATEJKKA RAY OLGUIN, MARGARET
ROMERO, STEVEN FARMER,
NAGO LUCERO, EVANGEL
MALDONADO, AND JOE CARRILLO,

    Defendants.

## PROPOSED FINDINGS AND<br>RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Defendants' *Martinez* Reports filed on

November 17, 2009.  *Docs. 94 & 95.*  Plaintiff Schwartz filed a response on January 13, 2009

(*Doc. 104*), and Defendants filed their Replies on January 26, 2010 (*Doc. 105*), and January

27, 2010 (*Doc. 106*).  This is a prisoner civil rights action under 42 U.S.C. § 1983, and Mr.

Schwartz is proceeding *pro se* and *in forma pauperis*.  Having considered the arguments,

pleadings and relevant law, the Court recommends Defendants' *Martinez* Report be

construed as a Motion for Summary Judgment and it should be granted in part.

## BACKGROUND

Mr. Schwartz filed an amended Complaint on September 11, 2008. *Doc. 36.* Defendants then filed a Motion to Dismiss for failure to state claim. *Doc. 61.* On September 30, 2009, Judge Brack adopted my Report and Recommendations and eight of Plaintiff's initial eleven claims were dismissed. *See Docs. 79 & 82.* Following this, Defendants were ordered to submit a *Martinez* Report,[1] which they did on November 17, 2009. *Docs. 94 & 95.* Mr. Schwartz filed his Response on January 13, 2010, (*Doc. 104*), and Defendants filed their Replies on January 26, 2010 (*Doc. 105*), and January 27, 2010 (*Doc. 106*). Then on February 18, 2010, Plaintiff filed an Unopposed Motion to Dismiss Defendant Bernice Vallerjos from this case. *Doc. 109.* Judge Brack granted that motion on February 23, 2010, and Defendant Vallejos is no longer a party to this suit.[2] *Doc. 110.*

Mr. Schwartz' claims stem from one pretrial detainment and several different incarceration periods at SCDC. His remaining claims are as follows: (1) violation of his Fourth Amendment rights upon arrest which lead to the wrongful death of his wife; (2) the water, lighting, and ventilation at SCDC presented an environmental hazard in violation

---

[1] Prior to the filing of the *Martinez* Reports, all Defendants were represented by the same counsel, Daniel Macke. However, on November 10, 2009, Mary Torres entered her appearance and notice of substitution of counsel for Defendant Bernice Vallejos. *Doc. 92.* As a result, there have been two *Martinez* Reports filed in this case.

[2] As a result, only one of the two filed *Martinez* Reports, (*Doc. 94*), is before the Court for consideration.

of his Eighth Amendment rights; (3) Schwartz was not allowed any recreation at SCDC in violation of his Eighth Amendment rights; and (4) Schwartz received inadequate medical care at SCDC in violation of his Eighth Amendment rights.  *See Doc. 104.*

In their *Martinez* Report, Defendants generally contend that they are entitled to judgment as a matter of law on the grounds of qualified immunity.

## MATERIAL FACTS

I.     *March 31, 2005 Arrest*:

On March 25, 2005, Mr. Schwartz was arrested for battery on a household member. *Doc. 94*, Ex. 1.  The Criminal Complaint states that Officer Benavidez arrived at Mr. Schwartz' home in response to an alleged domestic dispute in progress.  *Id.* at 5.  The Complaint further states that Officer Benavidez encountered Mr. Schwartz and his wife in the backyard of Plaintiff's residence.  *Id.*  Mr. Schwartz was hesitant to tell Officer Benavidez what had happened and his wife said that she did not remember what had transpired.  *Id.*  She additionally said she did not want Plaintiff to be arrested.  *Id.*  Officer Benavidez spoke with two neighbors, Sara Kelly and Lisa Utley, who claimed they had witnessed the dispute.  *Id.*  The women provided statements[3] asserting they had observed Mr. Schwartz grab his wife by the hair and throw her down to the ground.  *Id.*  Ms. Utely further told Officer Benavidez that Mr. Schwartz beat his wife.  *Id.*  Officer Benavidez then

---

[3] These statements have not been provided in the record.

arrested Mr. Schwartz and took him to the Socorro Police Department where he was processed for booking. *Id.* Following this, Mr. Schwartz was taken to SCDC where he was booked and incarcerated. *Id.* Plaintiff admits he told Officer Benavidez he had consumed a couple of beers earlier, but maintains he was not intoxicated. *Doc. 36* at 3. He further contends Officer Benavidez agreed with him that did not appear to be intoxicated.[4] *Id.*

  The Arrest/Booking Report indicates that Plaintiff was booked at 2:30 p.m., and released at 10:35 p.m. *Doc. 94*, Ex. 1, D000007. Joe Carillo is a Detention Officer at SCDC and was working when Mr. Schwartz was brought in. *Doc. 94*, Ex. B. In a sworn affidavit, he contends that Mr. Schwartz was being verbally abusive to the staff and that he was clearly intoxicated. *Id.* As a result of this alleged behavior, he instructed SCDC staff to hold Mr. Schwartz for eight hours, or until he was no longer under the influence. *Id.*

  Mr. Schwartz maintains that he was not intoxicated when he arrived at SCDC. *Doc. 104* at 4-5. He further states that he contacted a bail bondsman prior to the time that Officer Carillo instructed staff to hold Mr. Schwartz for eight hours. *Id.* at 5. He contends that the bondsman arrived at SCDC "while the sun was still shining," and that he was able to post bail well before 10:30 p.m. *Id.* Plaintiff also maintains that he twice asked to be

---

  [4] Other than Plaintiff's assertion that Officer Benavidez agreed he did not appear to be intoxicated, there is no other evidence in the record that this statement was made. In fact, Officer Benavidez did mark on his Arrest/Booking Report that Mr. Schwartz was under the influence of alcohol. *Doc. 94*, Ex. 1, D000007.

administered a breathalyser test and once asked to be administered a blood test.  *Id.*

At 8:30 p.m. that same night, Mr. Schwartz' wife's body was discovered in Lemitar, New Mexico, the victim of an apparent murder.  *Doc. 68*, Exhibit A.

II.     *Other Periods of Incarceration*:

Mr. Schwartz was incarcerated at SCDC several other times following the March 31, 2005, incident.  The relevant periods of incarceration are as follows:  (1) March 11, 2007, through April 5, 2007 ("Spring Incarceration");[5] (2) July 12, 2007, through July 16, 2007 ("Summer Incarceration"); and (3) August 9, 2007, through November 9, 2007 ("Fall Incarceration").  *See Doc. 94* at 2-4.

Plaintiff asserts that, while he was housed at SCDC, the water he had to drink tasted like lead, and that some of the cells he was assigned did not have hot running water.  *Doc. 104* at 9-10.  He additionally asserts that the lighting at SCDC was "terrible" for twenty-two hours out of the day.  *Id.* at 10.  Mr. Schwartz contends that, as a result of the poor lighting, he now has to wear bifocals.  *Id.* at 10-11.  Furthermore, Plaintiff contends that the ventilation at SCDC was inadequate because the ducts were clogged, which resulted in "hot, stuffy, stale, and stagnant" temperature conditions.  *Id.* at 11.

Mr. Schwartz also claims that he never received any form of recreation while housed

---

[5]  According to Schwartz, he was transferred to McKinley County Detention Center from March 23, 2007 through April 3 or 4, 2007.  *Doc. 36* at 10.

5

at SCDC.  *Doc. 104* at 15.  Defendants concede that inmates at SCDC are not provided "outdoor" recreation.  *Doc. 94* at 14.  However, they contend that inmates are allowed to come and go freely from their cells during the day.  *Id.*

Mr. Schwartz' last claim asserts that SCDC has no trained medical personnel on staff, and that they have a policy of not permitting the prescription of narcotic medication to prisoners.  *Doc. 104* at 16-17.  Defendants concede that there is no medical staff on duty at SCDC.  *Doc. 94* at 17.  Instead, inmates who request treatment are transported and treated at Socorro Medical Group.  *Id.*  Inmates who need emergency care are transported to the emergency room.  *Id.*  Additionally, if an inmate requires ongoing care, such as long-term medication administration, that inmate will be sent to McKinley County, where Socorro County has a contract.  *Id.* at 17-18.

On November 1, 2007, Plaintiff was taken to the emergency room because his knee was bothering him.  *Id.* at 18; *Doc 94*, Exhibit 1, D000110.  Mr. Schwartz claims he told the doctor who treated him that his previous doctor had prescribed him the narcotic hydrocodone for the pain.  *Id.*  He further asserts that the doctor told him she could not prescribe him hydrocodone because SCDC does not allow narcotic medication prescriptions.  *Id.*  Instead, the doctor prescribed Mr. Schwartz ibuprofen and directed him to apply ice and heat to his knee when needed.  *Id.*; *Doc. 94*, Ex. 1, D000110.

## STANDARDS OF REVIEW

I.    *Summary Judgment*

In the Court's Order directing submission of a *Martinez* Report (*Doc. 84*), the parties were advised, pursuant to *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), that their submissions could be used in deciding whether to grant summary judgment.  Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that he is "entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

The United States Court of Appeals for the Tenth Circuit has explained that "[a]n issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."  *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).  A fact issue is "material if under the substantive law it is essential to the proper disposition of the claim."  *Id.*  Here, the Court notes that "[a] *pro se* litigant's

pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). However, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact," *Munoz v. St. Mary-Corwin Hospital,* 221 F.3d 1160,1164 (10th Cir. 2000), and conclusory allegations are insufficient to establish an issue of fact which would defeat the motion. *Hall v. Bellmon,* 935 F.2d at 1109-1110. Additionally, in a summary judgment posture, the verified Complaint and the *Martinez* Report may be treated as affidavits. *Hall v. Bellmon,* 935 F.2d at 1111.

II.     *Section 1983*

Title 42 U.S.C. § 1983 provides a civil cause of action for individuals who are deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting "under color of law." *Adickes v. SH Kress & Co.,* 398 U.S. 144, 147, 150 (1970). Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 616-18 (1979).

III.    *Fourth Amendment*

Generally, detainment of intoxicated individuals is permissible because the state "has an interest in protecting the public from the intoxicated and the intoxicated from themselves." *Anaya v. Crossroads Managed Care Systems, Inc.,* 195 F.3d 584, 591 (10th Cir.

1999).  The Tenth Circuit has held that, under the Fourth Amendment, the analysis of seizures of allegedly intoxicated persons focuses on whether or not there was probable cause to believe the arrestee is a danger to himself or others.  *Id.* at 590.  *Anaya* established that, "[a] legitimate-though-unrelated criminal arrest does not itself give probable cause to detain [an] arrestee to detox," and an officer must have probable cause to believe an intoxicated person is a danger to himself or others to justify his detainment for detoxification purposes.  195 F.3d at 592; *see also McConney v. City of Houston*, 863 F.2d 1180, 1185 (5th Cir. 1989) (holding that "once a responsible officer actually does ascertain beyond a reasonable doubt that one who has been arrested is in fact not intoxicated, the arrestee should be released").

IV.    *Conditions of Confinement*

"Conditions of confinement fall within the Eighth Amendment because they are part of the penalty that criminal offenders pay for their offenses." *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996).  The Eighth Amendment requires jail officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998); *see also Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980) (holding that prison officials must provide "reasonably adequate ventilation, sanitation, bedding, hygiene materials, and

utilities (i.e. hot and cold water, light, heat, and plumbing")).

To hold a prison official personally liable for violating an inmate's right to humane conditions of confinement, a plaintiff must satisfy two requirements, consisting of a subjective and an objective component. *See Penrod*, 94 F.3d at 1405-06. The subjective component is satisfied only if the " '[prison] official knows of and disregards an excessive risk to inmate health and safety.'" *Barney*, 143 F.3d at 1310 (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "It is not enough to establish that the official should have known of the risk of harm." *Id*.

The objective component requires that the alleged deprivation be "sufficiently serious." *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Jail conditions may be "restrictive and even harsh" without running afoul to the constitution. *Barney*, 143 F.3d at 1311 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "[O]nly those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (internal quotation marks and citation omitted).

As to both components, the Court's inquiry should turn not only on the severity of the alleged deprivations, but also on their duration. *See Barney*, 143 F.3d at 1311 ("An important factor in determining whether the conditions of confinement meet constitutional standards is the length of the incarceration").

10

V.     *Medical Treatment*

In order to prevail on an Eighth Amendment claim based on medical indifference, a plaintiff must prove two elements: (1) objectively, that his medical needs were sufficiently serious; and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind.  *Self v. Crum*, 439 F.3d 1227, 1230-31 (10th Cir. 2006).

Under the objective component, a "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Mata,* 427 F.3d at 751 (internal quotations and citation omitted); *see also Kikumura,* 461 F.3d at 1292 (same).  Under the subjective component, a prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

## ANALYSIS

I.     *Liability of Defendants in their Official Capacities*

In his Amended Complaint, Plaintiff seeks compensatory damages from some Defendants "in their official and individual capacities."  *Doc. 36* at 5.  Suits against officers in their official capacities are suits against the entity of which an officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  In *Monell v. New York City Department of*

*Social Services*, 436 U.S. 658 (1978), the Supreme Court held that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694.  A policy is a policy statement, ordinance, regulation, or decision officially adopted and promulgated by the entities' officers.  *Id.* at 690.  A custom is a "persistent and widespread . . . practice[ ] of . . . officials."  *Id.* at 691 (*quoting Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)).

Neither the Complaint nor any of Mr. Schwartz' responsive pleadings allege that any custom or policy[6] is responsible for the deprivation of his constitutional rights.  Accordingly, to the extent that Defendants are being sued in their official capacities, those claims should be dismissed.[7]

II.     *Illegal Detention*

Mr. Schwartz' first remaining claim relates to his detention on March 31, 2005.  Despite the organization of Mr. Schwartz' complaint, the allegations made in "Claim One"

---

[6]  Mr. Schwartz does contend that SCDC has a policy of not administering narcotic drugs.  To the extent he is contending that policy violated his constitutional rights, that claim will be dealt with separately *infra*.

[7]  In a previous order, Plaintiff's claims explicitly brought against Socorro County Detention Center were dismissed on the basis that this institution could not be sued because it was an agency of the state.  *See Doc. 79, 82; Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Plaintiff's failure to allege a policy or custom is hereby recommended as an independent basis for dismissal of those claims.

assert two separate claims which must be analyzed separately.[8] First, Mr. Schwartz asserts that his Fourth Amendment rights were violated when he was detained at SCDC for detoxification purposes. Second, he contends that this illegal detention, by causing the death of his wife, constituted an interference with his right to freedom of intimate association. The Court considers each argument in turn.

A.    Fourth Amendment

Defendant Carrillo is the sole defendant for this claim. *See Doc. 82* at 5. Mr. Schwartz contends that Officer Carrillo did not have probable cause to detain him for detoxification after he was able to post bail. *See Doc.* 104 at 2-5.

Mr. Schwartz concedes that he told the arresting officers that he had consumed "a couple of beers, about an hour earlier." *Doc. 36* at 3. The Arrest/Booking Report indicates that he was under the influence of alcohol. *Doc. 94*, Ex. 1, D000007. Additionally, the record contains an SCDC Medical Screening Questionnaire which indicates that the inmate appeared to be under the influence of alcohol, but that his behavior did not suggest the risk of assault to staff or other inmates. *Id.* at D000001. In his affidavit, Officer Carrillo contends that: "Mr. Schwartz was being verbally abusive to the staff and he was clearly intoxicated. I do recall that I instructed staff to hold Mr. Schwartz for eight (8) hours or under he was no longer under the influence." *Doc. 94*, Ex. B.

_____

[8]   In recognition of the separateness of these claims, Mr. Schwartz addresses them separately in his Response to the *Martinez* Report. *Doc. 104* at 6.

13

Plaintiff maintains that he was fully aware of his surroundings, not intoxicated when he arrived at SCDC, and that his behavior was not threatening to himself or others. *See Doc. 104* at 2-3.

The Court is unable to confidently recommend a disposition on the motion for summary judgment or qualified immunity on this issue.   Accordingly, an evidentiary hearing shall be held in order to expedite the Court's consideration of this issue.

B.    Substantive Due Process

Mr. Schwartz asserts that Defendant Carrillo's detention of him resulted in the murder of his wife and, thereby, violated his freedom of intimate association with her. *Doc. 104* at 6.  The right of familial association is a substantive due process right, which was first recognized by the Tenth Circuit in *Trujillo v. Board of County Commissioners*, 768 F.2d 1186, 1188-89 (10th Cir. 1985).  *See also Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993) ("The freedom of intimate association is a substantive due process right, as is its subset, the familial right of association").   In *Trujillo*, the plaintiffs were a mother and her adult daughter, and they "allege[d] that the wrongful death of their [adult] son and brother, Richard Trujillo, while incarcerated at the Santa Fe County Jail, deprived them of their constitutional right of familial association." 768 F.2d at 1187.  The court recognized that the right of familial association existed beyond the context of parent/child relationships. *Id.* at 1188-89.  However, *Trujillo* placed a significant requirement on claims based on the right

14

of familial association.  The Tenth Circuit "conclude[d] that an allegation of **intent to interfere** with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983."  768 F.2d at 1190 (emphasis added).

The parties agree that Karen Schwartz was murdered on the night of March 31, 2005, while Plaintiff was in SCDC custody.  Plaintiff apparently believes that, if he had not been detained at that time, he could have prevented his wife's murder.  Plaintiff, however, does not allege that Officer Carrillo could have foreseen the tragic murder of Mr. Schwartz' wife.  Mr. Schwartz does not allege that he ever told Officer Carrillo that his wife was in danger or, that if he was not released, harm would come to her.  More importantly, Mr. Schwartz has not alleged that, by detaining Mr. Schwartz that night, Defendant Carrillo intended to deprive him of his familial association with his wife Karen.  Absent such an allegation, the substantive due process portion of Claim One should be dismissed.

## III.    *Eighth Amendment – Lack of Recreation*

Mr. Schwartz' next claim is that he was denied any form of recreation while housed at SCDC.  The Tenth Circuit has recognized "substantial agreement among the cases" that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates."  *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006) (*quoting Bailey v. Shillinger*, 828 F.2d 651, 653 (10th Cir. 1987) *and citing Perkins v. Kansas Dep't. of Corrections*, 165 F.3d 803, 810 (10th Cir. 1999)); *see also Housley v. Dodson*, 41 F.3d

597, 599 (10th Cir. 1994) ("Although we have never expressly held that prisoners have a constitutional right to exercise, there can be no doubt that total denial of exercise for an extended period of time would constitute cruel and unusual punishment prohibited by the Eighth Amendment").

The Tenth Circuit determined in *Fogle* that "a factfinder might conclude that the risk of harm from three years of deprivation of any form of outdoor exercise was obvious and that [prison] officials disregarded that risk by keeping [the prisoner] in administrative segregation." *Fogle*, 435 F.3d at 1260. However, in an unpublished opinion decided after *Fogle*, the Tenth Circuit held that a one-year deprivation of outdoor exercise "is not sufficiently serious to implicate the Eighth Amendment." *Ajaj v. United States*, 293 F. App'x 575, 584 (10th Cir. Sept. 15, 2008).

Here, taking the facts presented in the light most favorable to the Plaintiff, the Court assumes that Mr. Schwartz was denied any sort of recreation while he was housed at SCDC. Mr. Schwartz' longest period of confinement was exactly three months during his Fall Incarceration. His other periods of confinement lasted no longer than two weeks. The Court finds that the total 4-month period without outside exercise, while restrictive, is not sufficiently serious to rise to the level of a constitutional violation. *See Barney*, 143 F.3d at 1311 (an important factor in determining whether conditions of confinement implicate is the Eighth Amendment is duration of alleged injury); *see also Ajaj*, 293 F. App'x at 584.

Furthermore, Mr. Schwartz has not identified any injury resulting from the alleged deprivation. He has not alleged that the denial of outdoor recreation threatened or adversely affected his mental well being or that it caused him to suffer psychological or physical problems. His complaints, without any allegations of resulting psychological or physical stress, do not constitute deprivations sufficiently extreme to establish a cognizable constitutional claim. *See generally Crownhart v. Sullivan*, 347 F. App'x 412 *413 (10th Cir. Oct. 5, 2009) (affirming lower courts dismissal of eighth amendment claims because no physical injury was alleged); *see also, e.g., Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (requiring "extreme deprivations" for viable conditions of confinement claim).

Therefore, the Court recommends that this claim be dismissed.

IV.    *Eighth Amendment – Conditions of Confinement*

Mr. Schwartz contends that the water, lighting, and ventilation at SCDC were inadequate and amounted to a violation of his Eighth Amendment rights. As discussed above, prison officials must provide "humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (*quoting Barney*, 143 F.3d at 1310). A prison official violates the Eighth Amendment only when two elements are met: (1) the deprivation alleged is "sufficiently serious," *Wilson*, 501 U.S. at 298, resulting in the denial of "the minimal

civilized measure of life's necessities," *Rhodes*, 452 U.S. at 347; and (2) the prison official(s) acted with "deliberate indifference" to the existence of any risk inherent in exposure to the challenged conditions. *Farmer*, 551 U.S. at 834; *see also DeSpain v. Uphoff*, 264 F.3d 965, 973-76 (10th Cir. 2001).

The first prong is analyzed objectively while the analysis of the second prong is subjective, requiring that a defendant prison official have a culpable state of mind. *Id.* In order to prevail under an Eighth Amendment claim for constitutionally inadequate conditions of confinement, a prisoner must allege and prove both the objective component and subjective component associated with the deficiency.

Here, even assuming that the deprivations alleged by Plaintiff are sufficiently serious, the Court finds that Mr. Schwartz' claims should still be dismissed because he has failed to raise any issue of material fact as to whether or not Defendants were deliberately indifferent. Deliberate indifference is satisfied only if the "'[prison] official knows of and disregards an excessive risk to inmate health and safety.'" *Barney*, 143 F.3d at 1310 (*quoting Farmer*, 511 U.S. at 837). "It is not enough to establish that the official should have known of the risk of harm." *Id.*

Here, Mr. Schwartz only presents conclusory statements regarding Defendants' knowledge of any water, lighting, or ventilation problems at SCDC. He makes no assertions that he personally complained about these issues to any of the named

18

Defendants,[9] but instead states in a conclusory fashion that they should have been aware of them.[10]  *See Doc. 104* at 14.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to allege a claim.  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) (citation omitted).  For their part, each named Defendant contends in a sworn affidavit that Schwartz never complained to them about any of these issues.  *See Doc. 94*, Exs. A, B, C, D, F; *see also Doc. 95*, Ex. A.

Mr. Schwartz' conclusory and general allegations that Defendants knew of the conditions are insufficient to establish each Defendant had personal knowledge and disregarded the challenged conditions.  Such personal participation is an essential element of a § 1983 claim for an alleged violation of Plaintiff's rights.  *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  Accordingly, this claim should be dismissed.

V.      *Eighth Amendment – Medical Treatment*

---

[9] Mr. Schwartz does contend that he complained about the water to Kenny Sedillo who is not a party in this action.  *Doc. 104* at 9.

[10] Mr. Schwartz claims that Defendant Maldonado admits that "there has been complaints concerning the water in the facility."  A review of Defendant Maldonado's affidavit, however, reveals that the only complaints have been about taste and not any health issues such as lead content.  *Doc. 94*, Ex. A. It is also notable that, Defendant Maldonado asserts, and Plaintiff does not dispute, that the water at SCDC is the same water "available in the Courthouse, to which the Detention Center is attached.  As such, it is the same water available to inmates, to Detention Center staff, and to courthouse staff and visitors."  *Id.*  Knowing about taste complaints is a far cry from knowing and disregarding an excessive risk to inmate health.  *See Barney*, 143 F.3d at 1310.

Mr. Schwartz' last claims[11] are that (1) Defendants do not have any trained

medical staff at SCDC, and (2) he was denied administration of prescription narcotic

drugs for pain because of an SCDC policy against it.  *Doc. 104* at 17-20.

Allegations of lack of medical staff, standing alone, do not state a cognizable

claim for relief under the Eighth Amendment.  *See Daly v. Wiley*, 2010 WL 935660 *2 (D.

Colo. March 10, 2010) (finding that mere lack of medical staff is not a constitutionally

cognizable claim).  Lack of medical staff could support Plaintiff's other Eighth

Amendment claims if it is shown that as a result of this, Defendants were deliberately

indifferent to Mr. Schwartz' medical needs.  *See id.*  However, Plaintiff has failed to

make such a showing here.  Defendants contend, and Mr. Schwartz does not contest,

that, while they do not have medically trained staff on hand at SCDC, inmates who

request treatment are transported and treated at Socorro Medical Group.  *Doc. 104* at 16-

17.  Inmates who need emergency care are transported to the emergency room.  *Id.*

Additionally, if an inmate requires ongoing care, such as long-term medication

administration, that inmate will be sent to McKinley County, where Socorro County has

a contract.  *Id.* at 17-18.

Mr. Schwartz does not argue that he was ever denied medical treatment upon

---

[11]   To the extent that Mr. Schwartz is asserting a claim on behalf of other prisoners, Plaintiff does
not have standing to assert such claims.  *Swoboda v. Dubach*, 992 F.2d 286, 289-90 (10th Cir. 1993).

request.  In fact, the uncontested record shows that Mr. Schwartz was escorted to Socorro General Hospital when he complained about severe knee pain and he was treated by the physician on duty.  *Doc. 104* at 18; *Doc. 94* at 18.  There is no evidence in the record that Mr. Schwartz was not promptly seen by a physician when he complained of knee pain.  Mr. Schwartz' main complaint is that the physician on duty did not give him narcotic medication for his pain.  Because Plaintiff has not provided any facts that show deliberate indifference by any Defendant through the failure to have trained medical staff at SCDC, I recommend that this portion of his medical treatment claim be dismissed.

The second part of Mr. Schwartz' "lack of medical care" claim arises out of the physician's failure to prescribe him narcotic drugs for his knee pain as a result of an alleged SCDC policy against such prescriptions.  The Court is unable to confidently recommend a disposition on the motion for summary judgment or qualified immunity on this issue.  Accordingly, an evidentiary hearing shall be held in order to expedite the Court's consideration of this issue.

## CONCLUSION

Construing Defendants' *Martinez* Report as a Motion for Summary Judgment, the Court finds that there are no genuine issues of material facts with respect to (1) his substantive due process claim based upon the murder of his wife, (2) his Eighth

Amendment claim based upon the lack of recreation, (3) his Eighth Amendment claim based upon the conditions of his confinement, (4) his Eighth Amendment claim based upon a lack of medical staff.  Therefore, I recommend dismissing these claims with prejudice. The Court will make no recommendation regarding the disposition of the two remaining claims (the Fourth Amendment claim based upon his detoxification detention and the Eighth Amendment claim based upon an alleged policy against the prescription of narcotic drug) until after conducting an evidentiary hearing on those matters.  The evidentiary hearing will be scheduled in a separate order.

Wherefore,

**IT IS HEREBY RECOMMENDED** that

(1) Defendants' *Martinez* Report be considered as a Motion for Summary Judgment and it be granted in part;

(2)  Plaintiff's substantive due process claim arising from the murder of his wife be dismissed with prejudice;

(3) Plaintiff's Eighth Amendment claim based upon the lack of recreation be dismissed with prejudice;

(4)  Plaintiff's Eighth Amendment claim based upon the conditions of his confinement be dismissed with prejudice;

(5) Plaintiff's Eighth Amendment claim based upon a lack of medical staff be

22

dismissed with prejudice; and

(6) The Court withhold ruling on the Motion for Summary Judgment regarding

(a) Plaintiff's Fourth Amendment claim based upon his detoxification detention and

(b) Plaintiff's Eighth Amendment claim based upon an alleged policy against the

prescription of narcotic drug until after an evidentiary hearing has been held on those

matters and a subsequent Recommended Disposition has been filed.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE