IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


LEO J. SCHWARTZ, III,

    Plaintiff,

v.                                            CIV 07-1106 RB/GBW

JATEJKKA RAY OLGUIN, MARGARET
ROMERO, STEVEN FARMER,
NAGO LUCERO, EVANGEL
MALDONADO, AND JOE CARRILLO,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Defendants' *Martinez* Report filed on November 17, 2009, and a hearing held on October 14, 2010. *Docs. 94, 132.* This is a prisoner civil rights action under 42 U.S.C. § 1983, and Schwartz is proceeding *pro se* and *in forma pauperis*. Having considered the testimony, arguments, pleadings and relevant law, the Court recommends the remainder of Defendants' *Martinez* Report be construed as a Motion for Summary Judgment and it should be granted in part and denied part.

## BACKGROUND

Schwartz filed an amended Complaint on September 11, 2008. *Doc. 36.* Defendants then filed a Motion to Dismiss for failure to state claim. *Doc. 61.* On September 10, 2009,

I filed Proposed Findings and Recommendation on Disposition ("PFRD"), recommending that eight of Plaintiff's initial eleven claims be dismissed. *Doc. 79.* On September 30, 2009, Judge Brack adopted my PFRD and eight of Plaintiff's claims were dismissed. *See Docs. 79 & 82.* Following this, Defendants were ordered to submit a *Martinez* Report,[1] which they did on November 17, 2009. *Docs. 94 & 95.* Schwartz filed his Response on January 13, 2010, (*Doc. 104*), and Defendants filed their Replies on January 26, 2010 (*Doc. 105*), and January 27, 2010 (*Doc. 106*). Then on February 18, 2010, Plaintiff filed an Unopposed Motion to Dismiss Defendant Bernice Vallerjos from this case. *Doc. 109.* Judge Brack granted that motion on February 23, 2010, and Defendant Vallejos is no longer a party to this suit.[2] *Doc. 110.*

On April 2, 2010, I filed a PFRD, recommending that all but two of Schwartz' claims be dismissed. *Doc. 112.* I withheld making recommendations on Schwartz' Fourth Amendment claim and one of his Eighth Amendment lack of medical treatment claims. *See id.* at 13-14, 21. Judge Brack adopted my PFRD on June 1, 2010. *Doc. 122.* On October 14, 2010, I held an evidentiary hearing on Schwartz' two remaining claims. The purpose

---

[1] Prior to the filing of the *Martinez* Reports, all Defendants were represented by the same counsel, Daniel Macke. However, on November 10, 2009, Mary Torres entered her appearance and notice of substitution of counsel for Defendant Bernice Vallejos. *Doc. 92.* As a result, there were two *Martinez* Reports filed in this case.

[2] As a result, only one of the two filed *Martinez* Reports, (*Doc. 94*), is before the Court for consideration.

of the hearing was not to resolve any factual disputes but rather to clarify what factual disputes existed. The following individuals were called as witnesses at the hearing: Andres Vergara, Evangel Maldonado, Dr. Eileen Comstock, Officer Martin Benavidez, Theresa Lopez, and Leo Schwartz.[3] *See Doc. 132.* For the reasons described herein, along with my reasons articulated at the hearing on October 14, 2010, I recommend that Schwartz' Fourth Amendment claim survive and his Eighth Amendment medical care claim be dismissed.

## MATERIAL FACTS

**March 31, 2005, Arrest**

On March 25, 2005, Schwartz was arrested for battery on a household member. *Doc. 94*, Ex. 1. The Criminal Complaint and Officer Benavidez' testimony show that Officer Benavidez arrived at Schwartz' home in response to an alleged domestic dispute in progress. *Id.* at 5; *Evidentiary Hearing Transcript* at 40.[4] The Complaint further states that Officer Benavidez encountered Schwartz and his wife in the backyard of Plaintiff's residence. *Doc. 94*, Ex. 1. Schwartz was hesitant to tell Officer Benavidez what had

---

[3] The Court also intended to call Defendant Joe Carillo but he was not present for the hearing. Mr. Carillo did appear at the Show Cause Hearing held later that day. *See Doc. 133*.

[4] The hearing held by the Court on October 14, 2010, was not initially transcribed. However, on November 19, 2010, the Court ordered a transcribed copy of the hearing which was submitted on November 24, 2010. *Doc. 135.* A copy of this transcript has been made available to the parties for a fee, and the Court cites to testimony from the hearing from that transcript herein. Additionally, this citation shall be abbreviated "*EHT* at" followed by the page number hereinafter.

happened and his wife said that she did not remember what had transpired. *Id.* She additionally said she did not want Plaintiff to be arrested. *Id.* Officer Benavidez spoke with two neighbors, Sara Kelly and Lisa Utley, who claimed they had witnessed the dispute. *Id.* Officer Benavidez then arrested Schwartz and took him to the Socorro Police Department where he was processed for booking. *Id.* On the booking paperwork, Officer Benavidez circled that Schwartz was "under the influence." **cite**

When questioned about these events, Officer Benavidez testified that at the time of arrest, Schwartz was in fair condition, but that he noted an odor of alcohol on his breath and Schwartz admitted he had a couple beers earlier in the day. *EHT at* 41. Officer Benavidez further stated that, other than the odor of alcohol on his breath, Schwartz did not seem impaired, and that he did not consider him to be drunk.[5] *Id.* at 43-44. Officer Benavidez conceded that Schwartz was never belligerent, and that his only reason for concluding that Schwartz was under the influence of alcohol was because of the odor of alcohol on his breath and his admission to drinking two beers. *Id.* at 44, 52.

The Arrest/Booking Report indicates that Plaintiff was booked at Socorro County Detention Center ("SCDC") at 2:30 p.m., and released at 10:35 p.m. *Doc. 94*, Ex. 1, D000007.

---

[5] When asked to clarify the difference between being "under the influence" and "being drunk," Officer Benavidez testified that being "'drunk' is stumbling around, slurring speech," while "being 'under the influence' is the odor of alcohol on the breath, the Defendant's admission at the time and that's it." EHT at 44.

4

Defendant Joe Carillo[6] was a Detention Officer at SCDC at the time and was working when Schwartz was brought in. *Doc. 94*, Ex. B. In a sworn affidavit, he contends that Schwartz was being verbally abusive to the staff and that he was clearly intoxicated. *Id.* As a result of this alleged behavior, he instructed SCDC staff to hold Schwartz for eight hours, or until he was no longer under the influence. *Id.*

Ms. Theresa Lopez was a detention officer at SCDC the day Schwartz was arrested. *EHT at* 55. Part of her duties included booking and releasing inmates at SCDC. *Id.* Ms. Lopez testified that she was present when Schwartz was brought in for booking on March 31, 2005. *Id.* at 56. She further testified that he did have an odor of alcohol on his breath but that there was no other physical manifestation of him being intoxicated that she could recall. *Id.* at 56-57.

Regardless, Schwartz was put on an eight-hour detox hold, and Ms. Lopez testified that she remembered him requesting to bond out at that time. *EHT at* 56. She also stated that the jail received Schwartz' bond paperwork while he was still in jail. *Id.* at 60. Had he not been on a detox hold, he would have been able to leave at that time, which Ms. Lopez estimated was about three hours prior to the actual time Schwartz was released. *Id.* at 60-61.

---

[6] On the docket and in many pleadings, Joe Carillo's name is spelled "Joe Carrillo." However, according to his affidavit, his name is spelled with one 'r.' Therefore, the Court refers to him by that spelling.

Schwartz contends that he was not intoxicated when he arrived at SCDC. *Doc. 104* at 4-5. During his testimony, he maintained that, immediately after he called the bondsman to come pick him up, Officer Carillo came out of the office and ordered him to be held for an eight-hour detox. EHT at 91. He further testified that, after he had been in detox for about an hour, Ms. Lopez came to pull him out of detox so he could post his bond, which he did. *Id.* at 92. After he finished signing all his paperwork, they put him back in the detox tank. *Id.* at 92. Plaintiff also maintained that he continually asked to leave, that he twice asked to be administered a breathalyser test and once asked to be administered a blood test. *Id.* at 93. Schwartz was finally released at 10:35 p.m. *Doc. 94*, Ex. 1, D000007.

**Incidents Related to Eighth Amendment Claim**

During a separate period of incarceration,[7] Plaintiff was taken to the emergency room because his knee was bothering him. *Id.* at 18; *Doc 94*, Exhibit 1, D000110. Schwartz claims he told the doctor who treated him, Dr. Comstock, that his previous doctor had prescribed him the narcotic hydrocodone for the pain. *Id.* When called as a witness for testimony, Dr. Comstock confirmed that she treated Schwartz on November 1, 2007, when he went to the emergency room at Socorro General Hospital. *EHT at* 28. She stated that she evaluated him and gave him an injection of Toradol, which is a non-narcotic muscle

---

[7] The various periods during which Plaintiff was incarcerated at SCDC are described in an earlier filing by the Court. *See Doc. 112.*

relaxer and analgesic anti-inflammatory medication. *Id.* at 28-29. Dr. Comstock also prescribed Schwartz ibuprofen and directed him to apply ice and heat to his knee when needed. *Doc. 94*, Ex. 1, D000110; EHT at 28.

## STANDARD OF REVIEW

**Summary Judgment**

In the Court's Order directing submission of a *Martinez* Report, the parties were advised, pursuant to *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), that their submissions could be used in deciding whether to grant summary judgment. *Doc. 84.* Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that he is "entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

The United States Court of Appeals for the Tenth Circuit has explained that "[a]n

issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).  A fact issue is "material if under the substantive law it is essential to the proper disposition of the claim." *Id.*  Here, the Court notes that "[a] *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall,* 935 F.2d at 1110.  However, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact," *Munoz v. St. Mary-Corwin Hospital,* 221 F.3d 1160,1164 (10th Cir. 2000), and conclusory allegations are insufficient to establish an issue of fact which would defeat the motion. *Hall,* 935 F.2d at 1109-1110. Additionally, in a summary judgment posture, the verified Complaint and the *Martinez* Report may be treated as affidavits.  *Id.* at 1111.

## ANALYSIS

**Fourth Amendment Claim**

Defendant Carillo is the sole Defendant for this claim. *See Doc. 82* at 5.  Schwartz contends that Officer Carillo did not have probable cause to detain him for detoxification after he was able to post bail.  *See Doc.* 104 at 2-5.  Generally, detainment of intoxicated individuals is permissible because the state "has an interest in protecting the public from the intoxicated and the intoxicated from themselves." *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584, 591 (10th Cir. 1999).  The Tenth Circuit has held that, under the

Fourth Amendment, the analysis of seizures of allegedly intoxicated persons focuses on whether or not there was probable cause to believe the arrestee is a danger to himself or others. *Id.* at 590.

The evidence in the record supports a finding that there are genuine issues of material fact regarding whether or not Officer Carillo had probable cause to detain Plaintiff for detoxification after he was able to post bond. Schwartz contends that he was not intoxicated when he was arrested having consumed only two beers with lunch around noon that day. *Id.* at 86. His testimony on this point alone is likely sufficient to establish the existence of a genuine issue of material fact. Moreover, his account is strongly corroborated by the testimony of Officer Benavidez and Ms. Lopez. Officer Benavidez testified that, though Plaintiff's breath had the odor of alcohol, Plaintiff was not acting intoxicated in any fashion. *EHT at* 44, 52. Ms. Lopez says that, while she noticed the odor of alcohol on his breath, she observed no intoxicated behavior from Plaintiff. *Id.* at 59. In fact, her determination of intoxication was entirely based upon the fact that Officer Benavidez had circled "under the influence" on his arrest report. *Id.* at 62-3. She further revealed that Plaintiff asked to leave several times, and that if he had he not been on a detox hold, he would have been released around three hours prior to when he was actually released. *Id.* at 60-61. Given these facts, a rational trier of fact could conclude that Plaintiff was not a danger to himself or others at the time he would have otherwise been released

9

on the criminal charge. *See Anaya*, 195 F.3d at 592 (establishing that, "[a] legitimate-though-unrelated criminal arrest does not itself give probable cause to detain [an] arrestee to detox," and an officer must have probable cause to believe an intoxicated person is a danger to himself or others to justify his detainment for detoxification purposes); *see also McConney v. City of Houston*, 863 F.2d 1180, 1185 (5th Cir. 1989) (holding that "once a responsible officer actually does ascertain beyond a reasonable doubt that one who has been arrested is in fact not intoxicated, the arrestee should be released").

Accordingly, I recommend Defendant's Motion for Summary Judgment with regard to Plaintiff's Fourth Amendment claim be denied.

**Eighth Amendment – Medical Treatment**

Schwartz' last claim is that his Eighth Amendment rights were violated because he was not administered a narcotic pain medication which he needed due to his knee pain. He claims that the refusal to provide him with the narcotic was the result of an SCDC policy which prohibits doctors from prescribing narcotic medication to inmates. *Doc. 104* at 18-20.

The Eighth Amendment creates an obligation on the part of prison officials to provide adequate medical care to inmates. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The fact that a state must provide medical treatment does not mean, however, that mere negligence in diagnosing or treating an inmate's medical condition gives rise to a valid

constitutional claim under the Eighth Amendment. *Id.* at 106. Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* This standard is met when (1) there is a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," and (2) a prison official "knows of and disregards an excessive risk to inmate health or safety." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). A prisoner must satisfy both the objective component and the subjective component of the deliberate indifference test. *Mata v. Saiz*, 427 F.3d 745, 751-752 (10th Cir. 2005).

The dispute between the parties centers around whether SCDC does indeed have a policy prohibiting the prescription of narcotic pain medication to inmates. Plaintiff claims that such a policy exists and he points to statements allegedly made to him by guards. *Doc. 36* at 26-27; *Doc. 64* at 18-19. SCDC admits that it does not permit the dispensing of narcotics at the facility, but states that it does not prohibit doctors from making such prescriptions. *Doc. 94* at 17-18; *EHT at* 11, 17-20. SCDC contends that if an inmate receives such a prescription, he is taken to a local medical provider for it to be administered. *Id.* Even assuming the existence of the policy as contended by Plaintiff however, his Eighth Amendment claim cannot survive summary judgment.

As discussed above, to prevail on this claim, Plaintiff must show that he had a

medical need for the narcotic pain medication and that a prison official knew of and disregarded that need despite the consequential creation of an excessive risk to Plaintiff's health. *See Sealock*, 218 F.3d at 1209. First, Plaintiff has presented no evidence that he had a medical need for a narcotic pain medication while he was in SCDC's custody. While he may have been previously prescribed a narcotic, Dr. Comstock, the only doctor who treated him while in SCDC's custody, testified that he did not need narcotic pain medication. EHT at 29-31. Dr. Comstock was not under the belief that she could not prescribe Schwartz a narcotic due to an SCDC policy. To the contrary, she believed that SCDC would return the Plaintiff to the hospital to administer a narcotic if she prescribed it. *Id.* Second, even assuming Plaintiff has created a genuine issue about whether he needed the narcotic pain medication, there is absolutely no evidence that any prison official knew about such a need. Obviously, Dr. Comstock did not inform SCDC officials that Plaintiff needed such medicine because she did not believe he had such a need. Moreover, Plaintiff does not allege that he informed any prison official that his pain was of such intensity that only narcotics would be sufficient. In fact, Plaintiff concedes that when he requested to see a doctor for his knee pain, he was brought to a doctor. *Id.* at 80. After he was seen by Dr. Comstock on November 1, 2007, Plaintiff never formally requested additional medical treatment for his knee pain. *Id.* at 83-4. Essentially, Plaintiff's Eighth Amendment claim amounts only to a disagreement with the course of treatment prescribed and given by Dr. Comstock, which

does not arise to a claim of Constitutional dimension. *See e.g., Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (stating that "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation"); *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (noting that a difference of medical opinion between plaintiff and prison doctor "does not support a claim of cruel and unusual punishment").

No rational trier of fact could conclude that SCDC officials were deliberately indifferent to the fact that he had a medical need for narcotic pain medicine. Accordingly, I recommend Defendant's Motion for Summary Judgment with regard to Plaintiff's Eighth Amendment claim be granted.

## CONCLUSION

Construing Defendants' *Martinez* Report as a Motion for Summary Judgment, the Court finds that there are no genuine issues of material fact with respect to Schwartz' Eighth Amendment claim based upon an alleged policy against the prescription of narcotic drugs, and thus recommends summary judgment be granted and that claim be dismissed. However, the Court does find that there are genuine issues of material fact regarding Schwartz' Fourth Amendment claim and recommends summary judgment be denied for that claim.

Wherefore,

       **IT IS HEREBY RECOMMENDED** that

(1) Defendants' *Martinez* Report be construed as a Motion for Summary Judgment and it be granted regarding Plaintiff's Eight Amendment medical treatment claim and denied regarding Plaintiff's Fourth Amendment claim;

(2) Plaintiff's Eighth Amendment medical treatment claim be dismissed with prejudice;

(3) Plaintiff's Fourth Amendment claim against Defendant Carillo not be dismissed at this time;

(4) All Defendants except Defendant Carillo be dismissed from this lawsuit.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

                                                      UNITED STATES MAGISTRATE JUDGE